UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| BERRY PLASTICS CORPORATION, | ) | |
| Plaintiff and Counter Defendant, | ) ) ) ) | |
| v. | ) ) | 3:10-cv-76-RLY-WGH |
| INTERTAPE POLYMER CORPORATION, | ) ) ) | |
| Defendant and Counter Claimant. | ) ) ) | |

**ORDER ON SEALED MOTION TO COMPEL INSPECTION
OF ACCUSED MANUFACTURING PROCESS[1]**

**I. Introduction**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Intertape Polymer Corporation's Motion to Compel Inspection of Accused Manufacturing Process ("Motion to Compel") filed August 29, 2011. (Docket Nos. 46-47). Plaintiff, Berry Plastics Corporation, filed a Response on September 12, 2011. (Docket No. 50). Intertape Polymer Corporation's Reply Memorandum was filed on September 22, 2011. (Docket No. 51).

---

[1]Although the motion is sealed, court orders resolving disputes must be subject to public scrutiny to determine that judicial officials are performing their functions in a fair and reasonable manner. The Magistrate Judge has found no authority which stands for the proposition that a discovery order should be rendered as a sealed order.

## II. Background

This dispute concerns whether Intertape Polymer Corporation's patent, U.S. Patent No. 7,476,416, is valid and enforceable, and whether the process used by Berry Plastics Corporation's machine infringes upon that patent. The patent is purportedly for "a process for preparing an adhesive including a step whereby primary raw materials are mixed in a compounding section of a planetary roller extruder with at least one spindle that is a double transversal mixing spindle with a plurality of back-cut helical flights." (Complaint ¶ 8). Berry currently owns and operates a planetary roller extruder ("PRE") having a double transversal mixing spindle with back-cut helical flights that it purchased from Entex Rust & Mitschke GmbH for the purpose of manufacturing and selling adhesive for tapes. (*Id.* ¶¶ 10-12). Berry alleges that its PRE is not infringing upon Intertape's patent because it does not perform the step of introducing a non-thermoplastic elastomer into a feeding section of its PRE. The discovery dispute at issue here centers on Intertape's request to inspect Berry's allegedly infringing PRE to determine if it performs as Berry alleges. Specifically, Intertape seeks to:

    1. observe, photograph, and videotape the operation of the planetary roller extruder ("PRE") that is identified in paragraphs 10 and 11 of Berry's Complaint while it is producing and coating commercial adhesive;

    2. obtain and test samples of the adhesives produced using the PRE;

    3. obtain and test samples of each raw material in the adhesive composition, as inserted into the PRE during operation;

> 4. observe, photograph, and videotape the step-by-step disassembly of the PRE, with pauses at each step to measure and record the details of the components and means of assembly;
>
> 5. observe, measure, photograph, and videotape the disassembly of the PRE's injection ring to a condition sufficient to observe the flow channel through with [sic] material is distributed to the output ports of the injection ring

(*See* Intertape's Second Request to Enter Onto Land Under Rule 34). Intertape asserts that these four requests are necessary in order for Intertape to: (1) determine whether Berry's PRE is performing all of the steps required by the asserted process claims; (2) determine whether the process observed is the actual production process for the adhesives Berry makes; (3) memorialize the information necessary for Intertape's expert to testify at trial; and (4) determine if Berry is infringing upon any other claims of Intertape's patent. (Memorandum in Support of Motion to Compel Inspection of Accused Manufacturing Process at 1-2).

Berry argues that this request is unnecessary because, according to Berry, Intertape can confirm that there is no infringement by inspecting the PRE's injection ring and the flow channel through which material is distributed to the output ports of the injection ring. (Berry's Response at 1). Berry claims that this inspection should be allowed to occur only after Berry has privately disassembled the PRE, at which point Intertape will be permitted onto Berry's premises to see for itself that the PRE does not infringe on Intertape's patent. Berry argues that, to the extent that Intertape's Motion to Compel seeks to view

the PRE in action, view the disassembly of the PRE, and test the product that the PRE produces, the Motion to Compel must be denied because it is unduly burdensome and intrusive. Having examined the parties' arguments and the relevant legal authorities, the Magistrate Judge concludes that Intertape's Motion to Compel should be **GRANTED, in part,** and **DENIED, in part.**

### III.  Legal Analysis

Rule 26(b) of the Federal Rules of Civil Procedure provides for the discovery of any "nonprivileged matter that is relevant to any party's claim or defense . . . ." Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).  This court, however, may limit the frequency or extent of discovery if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  FED. R. CIV. P. 26(b)(2)(c).  In recognition of a party's right to conduct discovery, Rule 34(a) allows a party to request the opportunity to enter upon the opposing party's land in order to inspect the property.  FED. R. CIV. P. 34(a)(2).

Inspections are not an extraordinary means of discovery in a patent suit. *See Babcock & Wilcox Co. v. Public Service Co. of Indiana, Inc.*, 22 Fed.R.Serv.2d

340 (S.D. Ind. 1976).  In a patent infringement case, a party attempting to demonstrate that a particular manufacturing process is infringing has a "justifiable interest" in inspecting and testing the process.  *National Dairy Products Corp. v. L.D. Schreiber & Co., Inc.*, 61 F.R.D. 581, 582-83 (E.D. Wis. 1973).  A party who is not permitted to inspect an allegedly infringing process will be "left without any practical means of confirming its allegations" that another party has copied its manufacturing process.  *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, 2010 WL 2990753 at *2 (E.D. Wis. 2010).  The court in *Kimberly- Clark* explained its reasoning for allowing such an inspection, as follows:

> [T]he essential difficulty facing us grows out of the fact that we are here dealing with a method or process patent as distinguished from a product or composition patent.  In the latter instances a plaintiff may sustain his burden of establishing infringement by evidence as to the physical item or its composition, but a far more difficult problem is encountered by a complainant alleging infringement as to a patented method of production.  Short of clandestine exploration, no means of determining the methods followed at Addyston other than a visual inspection suggests itself.  The usual problems encountered where parties who are direct commercial competitors are at odds regarding secret processes are present, but these are susceptible to solution by protective order.

*Id.* at *2-3 (quoting *Dow Chemical Co. v. Monsanto Co.*, 256 F.Supp. 315, 317-18 (S.D. Ohio 1966)).

The Magistrate Judge concludes that the cases within the Seventh Circuit suggest that an inspection of Berry's process should be allowed.  However, the issue arises as to whether the inspection in the method requested is unduly

burdensome, as suggested by the Affidavit of John Baker, or is otherwise irrelevant.

A review of Intertape's disclosure of asserted claims and preliminary infringement contentions (Exhibit F) leads the Magistrate Judge to believe that, in layman's terms, a determination of infringement will rest upon whether the Berry process does or does not introduce "primary raw materials" into the "feeding section" of its PRE. Berry claims that it does not introduce this material into the feeding section of the PRE. Rather, Berry asserts that the primary raw material is placed in a separate machine and is injected into a different portion of the PRE (not the feeding section) through a particular mechanism. An additional dispute appears to arise out of whether the number of "planetary spindles" in the Berry process significantly differs from that of the Intertape patent.

**Request 1 – To observe, photograph, and videotape the machine in operation:**

In this case, both Berry and Intertape are alleged to be in the business of manufacturing, distributing, and selling a variety of tapes, including adhesive tapes. (*See* Complaint ¶¶ 6, 7 and Answer admitting same). As such, Intertape's first request to "observe, photograph, and videotape the operation of the planetary roller extruder ("PRE") that is identified in paragraphs 10 and 11 of Berry's Complaint while it is producing and coating commercial adhesive" raises the potential that other proprietary information could be obtained by Berry's direct competitor by an unrestricted session of visual depiction of the machine in

operation.  It appears to the Magistrate Judge that wide-ranging photographing and videotaping of the visible, external portions of the PRE while in operation would not necessarily establish whether Berry is introducing primary raw materials into the feeding section of the roller, nor whether the number of spindles present differs substantially from that described in Intertape's patent. Therefore, because the probative value of photographing the machine in operation is minimal (since a more detailed look at the inner workings of the PRE will be a better source of information relevant to infringement), the Magistrate Judge concludes that the probative value of the inspection and photography of the machine in operation is outweighed by the potential risk that Berry's direct competitor will be able to obtain other competitive information by the use of such a wide-ranging inspection and photography session.  Therefore, Intertape's request to conduct the session by an expert of their choosing is **DENIED.**

However, given that some inspection of the process is called for, the Magistrate Judge orders Berry to provide to Intertape photographs and/or videotapes of *all* portions of the PRE (while in operation) that Berry contend will clearly demonstrate that Berry's process does not introduce primary raw materials into the feeding section of its PRE and *all* portions of the PRE (while in operation) which Berry claims support its contention that the number of "planetary spindles" differs from the Intertape patent.  In the event Berry contends that visual inspection, photography, or videotaping of the operation of the PRE will not demonstrate whether primary raw materials are injected into

the feeding section or will not demonstrate the number of planetary spindles, Berry must certify by sworn response that no such visible inspection would address the issues brought forward in this suit. The Magistrate Judge may reconsider this order upon an affidavit from Intertape's expert describing with more particularity why videotaping of the PRE while in operation is necessary to render his opinion(s).

**Request 2 – Obtaining and Testing Samples of the Adhesives Produced:**

With respect to the second request, to "obtain and test samples of the adhesives produced using the PRE," the Motion to Compel a reasonable number of samples is **GRANTED.** The Magistrate Judge concludes that samples of the adhesives produced are intended to be marketed and are, therefore, not confidential or proprietary information.

**Request 3 – Obtaining and Testing Samples of Each Raw Material:**

With respect to the third request, to "obtain and test samples of each raw material in the adhesive composition, as inserted into the PRE during operation," the Magistrate Judge **DENIES** the Motion to Compel on the grounds that the sampling of each raw material in the adhesive composition is irrelevant to the issue of whether the materials are introduced into the feeding section of the PRE or whether the number of spindles are significantly different in the competing processes. Disclosure of each raw material used would unduly disclose Berry's proprietary information.

**Request 4 – Disassembly of the PRE:**

As to the fourth request, to "observe, photograph, and videotape the step-by-step disassembly of the PRE, with pauses at each step to measure and record the details of the components and means of assembly," it does appear that Berry admits that to determine whether it infringes some disassembly of the machine is required. The Affidavit of John Baker suggests that it will take at least 16 hours using a team of four personnel to disassemble the PRE and another 16 hours to reassemble it. It is alleged that the assembling/ reassembling would take at least 55 hours of production time and would cost Berry approximately $5,000, and, in addition, costs for its own counsel and expert to be present during the inspection.

The Magistrate Judge, therefore, **GRANTS, in part,** the Motion to Compel and concludes that observing, photographing, and videotaping of the step-by-step assembly process of the PRE shall be conducted under the following conditions:

(1) Counsel for each side shall attempt to schedule the disassembly of the PRE for a time when it might otherwise be out of operation. For example, should the machine be taken out of service on a regular rotating basis or be taken out of service for regular or routine maintenance, the parties should endeavor to schedule this inspection during that time period.

(2) The parties shall maintain time records with respect to the inspection. Berry shall be responsible for its own costs through and including the time necessary to permit inspection of the injection ring which it contends is the critical distinction between its process and that of Intertape. Berry shall also be responsible for the equivalent amount of time to reassemble the machine. In the event Intertape demands that Berry

continue the disassembly beyond the initial exposure of the injection ring, Intertape will be responsible for reasonable fees for Berry's employees, expert, and counsel to be present during any additional time requested beyond the time necessary to expose the injection ring and to reassemble the machine. By way of example, assume Berry begins the disassembly and is able to disassemble the machine to the point in which the injection ring can be viewed and inspected in a period of five hours. If Intertape is not satisfied with the inspection to that point in time, the inspection shall continue until Intertape has become satisfied with the inspection. Assume for purposes of this example that it takes seven additional hours to finish the disassembly to Intertape's satisfaction. Assume further that upon the completion of Intertape's inspection, it takes nine hours to reassemble the machine to the point of being ready to produce again. Under this example, the total time expended will be 21 hours (5 + 7 + 9 hours). Berry will be responsible for its own costs, for a total of ten hours (2 x 5 hours). Intertape will be responsible to pay reasonable costs for Berry's employees, expert, and counsel for a period of 11 hours. In addition to the payment, the inspection will be conducted pursuant to the Stipulated Protective Order entered by this court on December 8, 2010; Intertape's counsel of record, outside expert Mr. Rauwendaal, and a photographer/videographer (with no audio recording) are the only individuals allowed to attend the inspection on behalf of Intertape and will all sign the Declaration for Protective Order attached as Exhibit A to the Stipulated Protective Order; Intertape's counsel and expert shall refrain from talking directly to any Berry personnel during the inspection and to direct questions to the inspection through counsel for Berry; any information obtained, collected, or received during the inspection shall be deemed "highly confidential," as that term is defined in the Stipulated Protective Order, and shall be subject to the same limitations on disclosure that are set forth in the Stipulated Protective Order.

**Request 5 – Disassembly of the PRE's Injection Ring:**

As to the fifth request, to "observe, measure, photograph, and videotape the disassembly of the PRE's injection ring to a condition sufficient to observe

the flow channel through with [sic] material is distributed to the output ports of the injection ring," Berry does not object to the request. Therefore, the Motion to Compel is **GRANTED,** subject to the conditions previously specified as to the fourth request detailed above.

## IV. Conclusion

For the reasons outlined above, Intertape's Motion to Compel is **GRANTED, in part,** and **DENIED, in part.**

  SO ORDERED.

**Dated:** October 17, 2011

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Daniel Paul Albers
BARNES & THORNBURG
dalbers@btlaw.com

Stephen J. Butler
THOMPSON HINE LLP
steve.butler@thompsonhine.com

Jonathan P. Froemel
BARNES & THORNBURG - Chicago
jfroemel@btlaw.com

David L. Jones
JONES WALLACE, LLC
djones@joneswallace.com

Jeffrey C. Metzcar
THOMPSON HINE LLP
jeff.metzcar@thompsonhine.com

James E. Michel
BARNES & THORNBURG - Chicago
jmichel@btlaw.com

James D. Johnson
RUDOLPH FINE PORTER & JOHNSON
jdj@rfpj.com