UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| BERRY PLASTICS CORPORATION, | ) |
| | ) |
| Plaintiff and | ) |
| Counter Defendant, | ) |
| | ) |
| v. | )       3:10-cv-76-RLY-WGH |
| | ) |
| INTERTAPE POLYMER CORPORATION, | ) |
| | ) |
| Defendant and | ) |
| Counter Claimant. | ) |

**ENTRY ON DEFENDANT'S MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

This matter is before the Magistrate Judge on Defendant Intertape

Polymer Corporation's Motion to Compel Production of Documents (Filing No.

180) and Chief Judge Young's Order of Reference of December 12, 2013. The

motion is fully briefed. (Filing No. 181; Filing No. 189; Filing No. 191.) The

Magistrate Judge, having considered the motion, the parties' filings, and

relevant law, and being duly advised, hereby **GRANTS** the motion in part and

**DENIES** it in part.

## I.     Background

Berry and Intertape compete against one another in the manufacture

and sale of adhesive tapes. (Filing No. 24 at ¶¶ 6–7.) To prepare the adhesive

for its tapes, Berry employs a machine using rotating spindles manufactured

by Entex Rust & Mitschke GmbH ("Entex"). (*Id.* at ¶¶ 10–12.) In 2009, the

United States Patent Office assigned Intertape U.S. Patent No. 7,476,416 ("the '416 patent"), which recognized several of Intertape's employees as inventors of a process for using spindle technology to prepare adhesives. (*Id.* at ¶¶ 5, 18, 25.) In 2010, Berry initiated this lawsuit, seeking a judgment declaring that Intertape's patent is unenforceable and that Berry is entitled to continue to use Entex's spindle technology to prepare its adhesives. (Filing No. 1 at ECF pp. 9–10.) Intertape has defended the validity and enforceability of its patent and brought a counterclaim against Berry for directly infringing upon its patent rights. (Filing No. 24.) Although Berry and Intertape are the only parties to this litigation, Entex and its American sales agent, Triad Sales, LLC, also are subjects of Intertape's motion and have been involved from the beginning of the controversy.

According to Berry, Entex touted its spindle technology—and the technology's utility in preparing adhesives—at the 2003 National Plastics Expo. (Filing No. 1 at ¶¶ 16–17.) It gave a presentation, staffed an exhibitor's booth, displayed equipment, and distributed literature describing the technology. (*Id.* at ¶¶ 16–17, 19.) Intertape employees David Kovach and Thomas Lombardo attended the Expo and visited Entex's booth. (Filing No. 24 at ¶¶ 18–19.) According to Berry, Kovach and Lombardo spoke with Entex representatives about the potential of using Entex's spindle technology to prepare adhesives. (Filing No. 1 at ¶¶ 19–20.) A subsequent string of e-mails from Entex to Intertape describing the details of the spindle technology suggests Entex

sought to sell spindle machines to Intertape for that purpose. (*See* [Filing No. 189-3](#).)

In 2005, Intertape sought a patent for the process of using spindle technology to prepare adhesives. ([Filing No. 24 at ¶ 25](#).) Entex learned of Intertape's application and confronted Intertape, accusing Intertape of seeking a patent based on the information Entex had shared at and following the 2003 Expo. ([Filing No. 189-11 at ECF p. 3](#).) Intertape denied any misappropriation and stated that, although it wished to maintain a positive business relationship with Entex, Intertape would seek to prevent any of its competitors from using spindle technology to prepare adhesives. (*[Id.](#)* at ECF p. 2.)

In 2007, Berry sought to purchase spindle machines from Entex—and through Triad—to use in preparing adhesives. (*See* [Filing No. 182-17](#).) Berry (then called Covalence) knew of Intertape's patent application and perceived that its use of Entex's machines to prepare adhesives would constitute the exact process Intertape had applied to patent. (*[Id.](#)* at ECF p. 3.) Berry, Entex, and Triad discussed the potential of patent infringement liability (*[id.](#)*), but Entex reassured Berry with documents suggesting Intertape's patent application was a misappropriation of Entex's intellectual property (*see* [Filing No. 182-5](#)). Apparently satisfied that any patent rights Intertape might gain would be unenforceable, the three companies consummated their transaction. (*See* [Filing No. 1 at ¶ 10](#).)

In September of 2009, Berry issued a press release announcing upgrades to its plant in Franklin, Kentucky. (*See* [Filing No. 1-1 at ECF p. 2](#).) That

November, Intertape's attorneys notified Berry of the '416 patent—which had issued in January of 2009—and demanded that Berry provide assurances that it would not use spindle technology to prepare adhesives. (*Id.*) Intertape's letter initiated a torrent of correspondence among Berry, Entex, and Triad concerning the validity of Intertape's patent. Berry again requested information about Intertape's patented process from Entex (Filing No. 182-1), and Entex again responded with assurances that Intertape had based the patent application on the information and artwork Entex shared with Intertape at and following the 2003 Expo (Filing No. 182-2). Entex offered strategies for defeating the '416 patent and agreed that, although it could not afford to initiate litigation in the United States, it would support Berry in patent litigation with Intertape. (Filing No. 182-7; Filing No. 182-9.) Triad again served as an intermediary, facilitating communications between Entex and Berry. (*See* Filing No. 182-2; Filing No. 182-7; Filing No. 182-9.)

In December of 2009, a month after Intertape issued its demand, Entex again accused Intertape of misappropriating Entex's manufacturing process as the basis for its patent application. (Filing No. 189-13.) In January of 2010, Berry's attorneys responded to Intertape's demand, referencing Entex's letter and reiterating its allegations that Intertape stole its patented process from Entex. (Filing No. 1-2 at ECF pp. 2–3.) Berry's attorneys threatened to initiate a declaratory judgment action unless Entex entered a covenant not to sue Berry or any of its "direct or indirect importers, suppliers, manufacturers, distributors, . . . or any other parties for the importation, export, manufacture,

use, sale, or offer for sale" of Entex's spindle technology or for using that technology to prepare adhesives. (*Id.* at ECF pp. 3–4; Filing No. 1-3 at ECF p. 3.)

In March of 2010, Intertape's attorneys responded to Berry's letter. (Filing No. 1-4.) They denied Berry's allegations of misappropriation and declined to enter the covenant. (*Id.*) Intertape offered to license Berry's production of tape using its patented method and indicated it otherwise would welcome a lawsuit to test the validity of its patent. (*Id.*) This lawsuit followed. Intertape now asks the Court to compel Berry and Triad to produce certain documents they have withheld as privileged.

## II.    Legal Standard

A party to litigation is entitled to discover from his adversary "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A party who resists a discovery request must support any assertion of privilege with enough information to allow the requestor to assess whether the evidence withheld is in fact subject to a privilege. Fed. R. Civ. P. 26(b)(5)(A)(ii). Where federal law decides the case, federal common law also determines the existence and applicability of any evidentiary privilege. Fed. R. Evid. 501; *see also United States v. BDO Seidman, LLP*, 492 F.3d 806, 814 (7th Cir. 2007).

## III.    Discussion

Intertape asserts numerous reasons why Berry's and Triad's claims of privilege must fail. The parties have done an exceptionally good job of

streamlining the issues, and the Magistrate Judge will address each issue as the parties have presented it.

### A. Appendices 1 and 2: Have Berry, Entex, and Triad cooperated to advance a common legal interest?

Berry and Triad have asserted the common interest exception as a basis for withholding nearly every document in question. In Appendix 1 to its motion, Intertape identifies documents for which Berry and Triad have raised the common interest exception as a sole source of privilege. (*See* Filing No. 181-1.) In Appendix 2, Intertape has identified documents for which Berry and Triad have raised the common interest exception and an additional source of privilege. (*See* Filing No. 181-2.) Intertape asks the Court to compel Berry and Triad to produce the documents listed in Appendix 1 on grounds that the common interest exception is not an independent source of privilege. Intertape asks the Court to compel Berry and Triad to produce the documents listed in Appendix 2 on grounds that the parties to the communications do not share a common legal interest necessary to trigger the exception.

The Magistrate Judge will first determine whether Berry, Entex, and Triad shared a common legal interest that would qualify for the exception. Then, the Magistrate Judge will turn his attention to Intertape's specific arguments as to Appendices 1 and 2.

### 1. A party does not waive privilege by sharing an otherwise privileged document with a third party in confidence and in furtherance of a common legal interest.

In federal proceedings, the common interest exception entitles a party to avail itself of an evidentiary privilege even after it has shared a requested

document with a third party. *BDO*, 492 F.3d at 814–15. Generally, a party waives any claim that a document is privileged when she shares it with a third party. *E.g., Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 465444 at *2 (N.D. Ind. Feb. 7 2007). The common interest exception negates waiver and allows a party to invoke privilege even where she has shared the requested document with a third party—so long as she does so in confidence and for the purpose of advancing a shared legal interest. *BDO*, 492 F.3d at 815–16. The exception recognizes that parties with common objectives often benefit by working together and that those benefits can be secured only if the parties' collective communications are afforded the same protection as their communications with their individual attorneys. *See, e.g., id.* at 816; *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989); *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979). It also acknowledges that the public benefits from greater conformity to the law and less frequent litigation when parties can pool their efforts and resources to ensure compliance. *See BDO*, 492 F.3d at 816.

A party asserting the common interest exception therefore must articulate a qualifying legal interest shared by each party to the communication. The shared interest must be a <u>legal</u> interest. *E.g., BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 442 (S.D. Ind. 2004). An entirely commercial or financial interest does not qualify. *Id.* But, litigation need not be initiated or even anticipated for an entity to hold a qualifying legal

interest. *BDO*, 492 F.3d at 816. Indeed, the Seventh Circuit has recognized that complying with the law and avoiding litigation are valid legal interests. *Id.*

Simply identifying a legal interest does not entitle a litigant to the protections of the common interest exception. She must demonstrate that each party's interest is identical. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D. Ill. 2008); *Draus v. Healthtrust, Inc.—The Hosp. Co.*, 172 F.R.D. 384, 391 (S.D. Ind. 1997) (citing *Duplan Corp. v. Deering Millliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)). She also must demonstrate that the parties cooperated to advance their identical legal interest and that the document requested was shared in confidence and for the purpose of advancing their joint interest. *B.D.O.*, 492 F.3d at 815–16; *Schwimmer*, 892 F.2d at 244. Finally, because the common interest doctrine is an exception to the basic rule of waiver and not a freestanding privilege, the requestee also must show that the document was protected by another privilege <u>before</u> she shared it with the commonly interested parties. *Grochocinski*, 251 F.F.D. at 327; *Bitler*, 2007 WL 465444 at *3. In this portion of the Entry, however, the Magistrate Judge considers only whether Berry, Entex, and Triad shared a common legal interest, whether they cooperated to advance any joint interest, and when any joint interests and cooperative efforts first manifested themselves.

### 2. Berry, Entex, and Triad developed a common legal interest as early as March 8, 2007.

Berry has satisfied the Magistrate Judge that, as early as March 8, 2007, it shared a legal interest with Entex and Triad in maintaining their business relationship without incurring liability for infringing Intertape's rights under the '416 patent. Berry obviously and justifiably developed concern about liability for infringement when it learned about Intertape's patent application before its meetings with Entex and Triad in March of 2007. (*See* Filing No. 182-17.) Berry invested in a plan to produce adhesives in its Franklin plant using Entex's spindle technology and method. Before its purchase of the spindle machines had been completed, Berry detected that Entex's process was very similar—if not identical—to Intertape's patent-pending process. (*Id.* at ECF p. 2–3.) From that point forward, liability for infringing the '416 patent became an important part of Berry's transaction with Entex and Triad. (*See id.* (describing Intertape's patent application as being "of BIG concern" and possibly derailing the sale).)

Berry's cause for concern grew more pronounced after Intertape warned it against manufacturing adhesives with Entex's spindle machines in November of 2009. (*See* Filing No. 1-1.) After Berry responded by challenging the validity of the '416 patent and threatening its declaratory judgment action (*see* Filing No. 1-2 at ECF pp. 2–3), Intertape told Berry it would welcome the litigation (Filing No. 1-4 at ECF p.2). Berry subsequently filed its Complaint in May of 2010 (Filing No. 1), and Intertape has countersued Berry for direct

infringement of its '416 patent rights ([Filing No. 24 at ECF pp. 17–19](#)). Berry's interest in avoiding patent liability is beyond question and manifested itself at least as early as March 8, 2007.

Entex and Triad also developed a legal interest in avoiding patent liability as early as March 8, 2007. An entity that "actively induces" another party's direct infringement of a patent is liable to the same extent as the direct infringer. 35 U.S.C. § 271(b). And, where one entity directly infringes a patent with a machine that another entity has imported into the United States knowing it has been designed for and will be used in a process that would infringe a patent, the importing entity can be liable for "contributory infringement." 35 U.S.C. § 271(c). Once an entity is threatened with a suit for direct infringement, its suppliers are justified in fearing—and develop a legal interest in avoiding—liability as inducers or contributory infringers. *Nat'l Coupling Co. v. Press-Seal Gasket Corp.*, 323 F.2d 629, 633 (7th Cir. 1963). *See also Arris Grp., Inc. v. British Telecomms., PLC*, 639 F.3d 1368, 1375, 1379, 1381 (Fed. Cir. 2011).

As a matter of law, then, Entex and Triad developed a legal interest in avoiding patent liability no later than November 12, 2009, when Intertape demanded assurances that Berry was not infringing its patent rights at its recently upgraded Franklin plant. (*See* [Filing No. 1-1](#).) However, the Magistrate Judge finds that their interest manifested itself as early as March 8, 2007. Entex confronted Intertape about its patent application in October of 2005. ([Filing No. 189-11 at ECF p. 3](#).) In response, Intertape expressed a desire to

maintain a beneficial relationship with Entex but made clear that it would seek to "protect itself by keeping the PRE-Noppen Spindeln adhesive compounding process out of the hands of its competitors." (*Id.* at ECF p. 2.) Although perhaps not a direct threat of litigation against Entex, this message gave Entex reason to believe Intertape would sue to enforce its patent rights. By March of 2007, Entex was in the midst of executing (through Triad) a sale of spindle machines to Berry—Intertape's direct competitor. (Filing No. 182-17.) When Berry became aware of Intertape's patent application and raised concerns that preparing adhesives with Entex's spindle technology might infringe Intertape's patent rights (Filing No. 182-17 at ECF p. 2–3), it would have been reasonable for Entex and Triad to become concerned about liability for aiding and abetting Berry's direct infringement.

That Intertape has neither initiated nor directly threatened an infringement suit against Entex or Triad is immaterial. Litigation need not be initiated or anticipated for a party to hold a legal interest in complying with the law and avoiding litigation. *BDO*, 492 F.3d at 816. Venerable precedents suggested that Entex and Triad might incur liability by continuing to sell their spindle technology to American adhesive manufacturers, and operating their businesses free from the threat of litigation is a valid legal interest.

That Entex is a foreign entity also is immaterial. An entity that acts entirely outside the United States may be liable for aiding and abetting infringement so long as the underlying direct infringement occurs in the United States. *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1141 (7th Cir.

1975) (holding that "'active inducement' may be found in events outside the United States if they result in a direct infringement here"). *See also, e.g.*, *Nippon Elec. Glass Co., Ltd. v. Sheldon*, 49 F. Supp. 119, 122 (S.D. N.Y. 1980) (holding that "contributory infringement under 35 U.S.C. § 271(b) or (c), does not require any activity by the contributory infringer in this country, as long as the direct infringement occurs here").[1]

Whether Intertape could establish personal jurisdiction over Entex—although integral to its success in a hypothetical infringement claim against Entex—is irrelevant to resolving this motion. Entex bears no obligation to welcome all lawsuits it would be calculated to win. It has an interest in avoiding liability in the first place by ensuring that its actions conform to the law. *BDO*, 492 F.3d at 816. Even if Entex was certain that it could achieve dismissal of a contributory infringement suit for lack of personal jurisdiction, Entex would retain a legal interest in maintaining its business relationship with Triad and Berry without being sued at all.[2]

---

[1] The Magistrate Judge acknowledges that cases like *National Coupling*, *Arris*, *Honeywell*, and *Nippon* arose out of a formally different legal question than we seek to address here: whether a supplier like Entex has standing to bring a declaratory judgment action against a patentee like Intertape. But, those cases all hinged on the same question posed here: whether the supplier had a legal interest in avoiding liability for aiding or abetting patent infringement. *See Arris*, 639 F.3d at 1373 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)) (explaining that the existence of an "'adverse legal interest'" is a prerequisite to an Article III case or controversy).

[2] Intertape has offered *Casual Living Worldwide, Inc. v. Lane Furniture Indus., Inc.*, No. 3:07-CV-167-H, 2009 WL 37162 (W.D. Ky. Jan. 6, 2009), as an exemplary resolution of a factually similar case. To the extent this holding conflicts with that of *Casual Living*, the Magistrate Judge respectfully disagrees, finding that *Honeywell* controls and that precedents like *Nippon* are more persuasive.

Finally, the Magistrate Judge rejects Intertape's argument that Berry has failed to articulate a common legal interest because the three companies' cooperation was motivated by financial gain. (*See* Filing No. 181 at ECF p. 11.) Intertape's incentives to enforce its patent rights no doubt are tied to profit maximization, but it still holds a legal interest in enforcing the patent. (If it did not, it would lack standing to maintain its counterclaim for infringement.) By the same token, the three companies' shared financial interest in continuing to do business together does not preclude the notion that they also shared a common legal interest in doing so without incurring patent liability. The precedents on this topic distinguish between legal interests and mere financial interests. *E.g.*, *BASF*, 224 F.R.D. at 442. Few legal interests stand wholly independent from any financial consideration. To benefit from the common interest exception, a party must articulate a common legal interest; she need not also prove the absence of any financial interest.

In conclusion, the Magistrate Judge finds that Berry, Entex, and Triad shared an identical legal interest in maintaining their business relationship without incurring liability for infringing Intertape's rights under the '416 patent. The Magistrate Judge further finds that they shared this interest as early as March 8, 2007, and that it has not been terminated. But this is not the end of the inquiry. To defeat Intertape's motion to compel, Berry also must demonstrate that the three companies cooperated to advance their common legal interest.

### 3. Berry, Entex, and Triad cooperated to advance their common legal interest as early as March 8, 2007.

To invoke the protections of the common interest exception, a party must demonstrate that the parties to the communication not only share a common legal interest but that they have cooperated to advance it. *B.D.O.*, 492 F.3d at 815–16. The three companies' joint effort to avoid liability by defeating the '416 patent was undeniably coordinated and well-focused after Berry received Intertape's demand letter in November of 2009. Entex pledged Berry its support in demonstrating the patent's invalidity and, at Berry's request, worked with Triad to provide evidence and advice for use in defeating the patent. (*See* Filing No. 182-2; Filing No. 182-7; Filing No. 182-9.) Berry has attempted to eliminate any liability for Entex or Triad—first by negotiating a covenant with Intertape, and now by suing to declare the patent unenforceable. (Filing No. 1-2 at ECF pp. 3–4; Filing No. 1-3 at ECF p. 3.) Even so, the Magistrate Judge finds ample evidence demonstrating that their cooperative efforts commenced as early as March 8, 2007.

The Visit Report dated March 8, 2007, reflects a joint discussion of Intertape's pending patent and the beginning of a collective effort to do business while avoiding patent liability. (*See* Filing No. 182-17.) The Report was authored by Triad's Ralf Quack and listed Entex's Michael Batton and Berry's Jerry Serra, Abboud Mamish, and RK Kannabiran as participants. (*Id.* at ECF p. 2.) It reveals that they discussed Intertape's pending patent at length. (*Id.* at ECF pp. 2–3.) Quack quoted Serra as saying of Intertape's process, "'[T]his is

exactly what we are trying to do and this is a big, big problem.'" (*Id.* at ECF p.3.) Quack wrote that "the patent situation is of big concern and if not absolutely clarified, there will be not [sic] further proceeding with ENTEX." (*Id.*) The Visit Report also indicates that Entex agreed to provide all the information it could to "prevent any patent fraud" and that Quack would relay that information from Entex to Berry. (*Id.* at ECF p. 2.) To the Magistrate Judge, this report reflects an acknowledgment by the three companies that Intertape's pending patent created potential liability and a commitment by all three to take the steps necessary to complete their transaction without incurring liability.

That Berry's cooperation with Entex and Triad began in March of 2007 is confirmed by Quack's May 1, 2007 e-mail to Berry employees Jerry Serra and Kris Hockstedler. (Filing No. 182-7.) Entitled "Prior Art Rubber/Adhesive Compounding," this message appears to include the information Entex promised to provide during Berry's visit two months earlier. (*Id.* at ECF p. 2.) Attached to the message are three documents that appear to be slides and a paper Entex presented at the 2003 Expo and a list of participants from that conference. (*Id.* at ECF pp. 2–3.) Quack referred to the attachments as "prior art," or evidence showing that the process Intertape claims to have invented existed before it applied for a patent. (*Id.* at ECF p. 2.) Quack also explained that, although Entex held patents for many of its machines, it held no patents for processes, including the process for which Intertape claimed a patent. (*Id.* at ECF p. 3.) Taken together with the Visit Report from March of 2007, Quack's

e-mail represents a joint effort to collect evidence that would defeat the '416 patent in response to an infringement claim.

Thus, the Magistrate Judge finds that Berry, Entex, and Triad have cooperated to advance their joint interest in doing business while avoiding patent liability since at least March 8, 2007. The Magistrate Judge therefore finds that the common interest exception may apply to documents shared among Berry, Entex, and Triad on or after March 8, 2007.

### 4. Berry and Triad must produce documents identified in Appendix 2 that they shared before March 8, 2007, and they may supplement their privilege logs as to documents identified in Appendix 1.

For the foregoing reasons, the Magistrate Judge finds that Berry, Entex, and Triad began cooperating to advance their common legal interest on March 8, 2007. Accordingly, neither Berry nor Triad is entitled to the protection of the common interest exception for any document it shared before that date. The Magistrate Judge therefore orders Berry and Triad to produce any document identified in Appendix 2 that was shared before March 8, 2007.

Intertape argues that Berry and Triad must produce the documents identified in Appendix 1 because they have raised the common interest exception as an exclusive source of privilege. (Filing No. 181 at ECF pp. 6, 8–9.) In response, Berry concedes that the exception only averts waiver as to documents that are subject to a separate, independent evidentiary privilege but argues that its use of the phrase "common interest privilege" implicitly references the attorney-client privilege. (Filing No. 189 at ECF pp. 16–17.) Berry has offered to supplement the privilege logs to demonstrate that the documents

identified in Appendix 1 satisfy the elements of both the attorney-client privilege and the common interest exception. (*Id.* at ECF pp. 16–17 n.4.) The Magistrate Judge orders Berry and Triad to either produce the documents identified in Appendix 1 or file a supplemented privilege log as to those documents within seven days of the issuance of this Entry. The Magistrate Judge will then determine from the supplemented logs whether Berry and Triad may withhold those documents on grounds of the common interest exception.

**B. Appendix 3: Have Berry and Triad established that an attorney was a party to the communications requested?**

In Appendices 3 through 5 to its Motion, Intertape identifies documents Berry and Triad have withheld on grounds of both the common interest exception and the attorney-client privilege. According to Intertape, the privilege log entries for the documents identified in Appendix 3 (*see* Filing No. 181-4) fail to demonstrate the applicability of the attorney-client privilege because they do not indicate that any attorney was involved as an author, recipient, or originator of the information shared. (Filing No. 181 at ECF pp. 14–15.)

Intertape correctly notes that the attorney-client privilege generally applies only to communications between an attorney and the attorney's client. But, the privilege sometimes is more inclusive. For example, communications between non-attorneys in the course of assembling information requested by an attorney may reveal the substance of a confidential attorney-client communication and therefore are protected by the attorney-client privilege. *See Heriot v. Boirne*, 257 F.R.D. 645, 655–66 (N.D. Ill. 2009).

In this case, the Magistrate Judge finds that an in camera review is necessary to determine whether the documents listed in Appendix 3 clearly reveal the substance of confidential attorney-client communications. Therefore, the Magistrate Judge orders Berry and Triad to file any document listed in Appendix 3 under seal for in camera review within seven days of the issuance of this Entry. The Magistrate Judge then will determine on a document-by-document basis whether Berry and Triad may withhold these documents under the attorney-client privilege and the common interest exception. The Magistrate Judge will find that Berry and Triad have surrendered any claim of privilege as to any document not timely filed.

### C. Appendix 4: Have Berry and Triad established that the documents requested communicated legal advice?

Intertape argues that Berry and Triad must produce the documents identified in Appendix 4 (*see* Filing No. 181-5) because their privilege log entries fail to establish that the documents communicate any legal advice. (Filing No. 181 at ECF pp. 15–16.) The Magistrate Judge has reviewed the basis for privilege and finds that, in this particular case, Berry and Triad have satisfied their burden of establishing that these documents relate to the communication of legal advice. Therefore, Berry and Triad need not produce the documents identified in Appendix 4 unless directed to do so elsewhere in this Entry.

**D. Appendix 5: Have Berry and Triad demonstrated that the documents requested were shared in confidence?**

Intertape argues that Berry and Triad must produce the documents identified in Appendix 5 (Filing No. 181-6; Filing No. 181-7; Filing No. 181-8) because their privilege log entries fail to establish that the documents were communicated in confidence. (*See* Filing No. 181 at ECF pp. 16–18.) The Magistrate Judge agrees with Berry that the documents' distribution lists establish that they were distributed confidentially. The common legal interest shared among Berry, Entex, and Triad applies to these documents and prohibits the Magistrate Judge from concluding that the documents were not maintained in confidence.  Therefore, Berry and Triad need not produce the documents identified in Appendix 5 unless directed to do so elsewhere in this Entry.

**E. Appendix 6: Have Berry and Triad demonstrated that the documents requested were prepared in anticipation of litigation?**

In Appendix 6 to its Motion, Intertape identifies documents Berry and Triad have withheld on grounds of the work product privilege in addition to the common interest exception and the attorney-client privilege. (Filing No. 181-9.) Intertape argues that Berry and Triad must produce these documents because they were prepared before they could have anticipated litigation. (Filing No. 181 at ECF p. 18.) Intertape further argues that the work product privilege does not apply to any of the documents listed because Triad is not a party to the litigation and the privilege applies only to parties. (*Id.* at ECF pp. 18–19.)

The work product privilege protects from disclosure only documents prepared in anticipation of litigation. *E.g.*, *Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 457 (N.D. Ill. 1974), *aff'd without opinion*, 534 F.2d 330 (7th Cir. 1976). But, the privilege may apply to documents created before litigation has been initiated. Before Sylgab filed its direct infringement suit, the defendant's attorney prepared documents assessing the validity of Sylgab's patent and whether the defendant had infringed it. *Id.* Judge Bauer held, and the Court of Appeals affirmed, that these documents were privileged work products prepared in anticipation of litigation. *Id.* Still, "the prospect of litigation" must be "identifiable because of specific claims that have already arisen." *Id.*

The Magistrate Judge finds that it was reasonable for Berry and Triad to anticipate litigation beginning January 13, 2009, when the '416 patent issued. Berry and Triad assert work product protection for documents created as early as 2007, more than a year before the '416 patent issued, almost two years before Intertape sent its demand letter to Berry, and three years before Berry filed its Complaint. (*See* Filing No. 181-9.) Berry, Entex, and Triad contemplated and developed a legal interest in avoiding liability for infringing Intertape's patent rights as early as March 8, 2007. But, until the patent issued, the prospect of litigation was not identifiable because no specific claim had arisen. *See Sylgab*, 62 F.R.D. at 457.

Berry offers case law for the proposition that, due to the nature of patent law, any work product analyzing a patent law is created in anticipation of

litigation, no matter when it is created. (*See* [Filing No. 189 at ECF p. 23](#).) To the extent those opinions would privilege work product created before a patent has issued, the Magistrate Judge respectfully disagrees. The Magistrate Judge believes that issuance of a patent is more than a mere formality that automatically follows an application. Until the patent issued, Intertape possessed no definitive legal rights to enforce. During the application phase, Berry, Entex, and Triad reasonably might have feared patent liability and taken steps to avoid liability by compliance or by preparing for litigation. But any cause of action during that phase was hypothetical. Berry, Entex, and Triad could not have anticipated litigation within the context of the work product privilege until the '416 patent issued.

The Magistrate Judge concludes that litigation could reasonably be anticipated as of January 13, 2009, the date the patent issued. Any documents predating the issuance of the patent are not privileged work product and may not be withheld on that basis.

Even though litigation need not have commenced for the work product doctrine to apply, an entity that has not been made a party to the litigation enjoys only limited use of the work product privilege. *See Castro v. Sanofi Pasteur, Inc.*, No. 13 C 2086, 2013 WL 1707094 at *2 (N.D. Ill. Apr. 19, 2013). The work product privilege applies only to materials "prepared . . . by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). Courts in our circuit have construed Rule 26 strictly despite its tension with the common law rule that work product may be created before litigation

ensues. *See Castro*, 2013 WL 1707094 at \*2. Accordingly, neither Berry nor Triad may withhold documents on the basis of the work product doctrine unless they were prepared by or for Berry.

For the foregoing reasons, neither Berry nor Triad may withhold a document created before January 13, 2009, on grounds of work product privilege. The Magistrate Judge orders Berry and Triad to produce any such document <u>unless</u> they could withhold the document under a different privilege and consistent with this Entry. Berry and Triad may withhold as work product otherwise qualifying documents prepared <u>by</u> Berry on or after January 13, 2009. To the extent Berry and Triad seek to withhold as work product otherwise qualifying documents prepared <u>for</u> Berry after January 13, 2009, they must file such documents with the Court under seal for in camera review within seven days of the issuance of this Entry. The Magistrate Judge then will determine on a document-by-document basis whether the documents were created for Berry and in anticipation of litigation or for trial as required by Rule 26. The Magistrate Judge will find that Berry and Triad have surrendered any claim of privilege as to any document not timely filed.

### F. Appendix 7: Have Berry and Triad waived privilege as to requested documents by selectively disclosing documents addressing the same subject matter?

Intertape argues that Berry and Triad have waived any claim of privilege to all documents identified in Appendix 7 (Filing No. 181-10; Filing No. 181-11) by selectively disclosing privileged documents addressing the same subject matter. The Magistrate Judge finds that Intertape has not established

intentional waiver as required by Federal Rule of Evidence 502. The fact that Berry has disclosed certain non-privileged documents does not serve as a basis for finding intentional waiver. The Magistrate Judge adopts the rationale expressed in Berry's brief. (*See* Filing No. 189 at ECF pp. 26–28.)

## IV. Conclusion

For the foregoing reasons, the Magistrate Judge **GRANTS** Intertape's motion to the extent he compels Berry and Triad to disclose (a) documents for which they have relied upon the common interest exception and which pre-date March 8, 2007, and (b) documents for which they have relied upon the work product privilege and which pre-date January 13, 2009. Any documents the Magistrate Judge has ordered Berry and Triad to submit for in camera review must be filed with the Court under seal and within seven days of the issuance of this Entry. In all other respects, the Magistrate Judge **DENIES** the Motion to Compel.

**SO ORDERED** the 21st day of February, 2014.

Served electronically on all ECF-registered counsel of record.