UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| BERRY PLASTICS CORPORATION,  )<br>  )<br>    Plaintiff and )<br>    Counter Defendant, )<br>  )<br>    v. )<br>  )<br>INTERTAPE POLYMER CORPORATION, )<br>  )<br>    Defendant and )<br>    Counter Claimant. ) | 3:10-cv-76-RLY-WGH |

**ENTRY ON PLAINTIFF'S SEALED MOTION TO COMPEL PRODUCTION OF FINANCIAL DOCUMENTS RELEVANT TO DAMAGES CALCULATIONS**

This matter is before me, William G. Hussmann, United States Magistrate Judge, on Plaintiff Berry Plastics Corporation's Sealed Motion to Compel Production of Financial Documents Relevant to Damages Calculations (Filing No. 199) and Chief Judge Young's Order of Reference entered March 18, 2014. The Motion is fully briefed. (Filing No. 200; Filing No. 207; Filing No. 209; Filing No. 226; Filing No. 237.) Having considered the motion, the parties' filings, and relevant law, and being duly advised, I hereby **GRANT** Berry's motion in part and **DENY** it in part.

**I.    Background**

Berry and Intertape compete against one another in the manufacture and sale of adhesive tapes. (Filing No. 24 at ¶¶ 6–7.) In 2009, the United States Patent Office assigned Intertape U.S. Patent No. 7,476,416 ("the '416

patent"), which recognized several Intertape employees as inventors of a process for using a planetary rolling extruder (PRE) to prepare adhesives. (*Id. at ¶ 5*.) Intertape maintains it has never used a PRE to manufacture it tapes, but it plans to do so beginning this summer. (Filing No. 237-6 at ¶ 3.) Berry has used a PRE to manufacture some of its duct tapes since at least May of 2010. (Filing No. 1 at ¶¶ 10–12.) Intertape asserted its patent rights against Berry (Filing No. 1-1 at ECF p.2; Filing No. 1-4), and Berry initiated this lawsuit, seeking a judgment declaring that Intertape's patent is unenforceable and that Berry may continue to prepare its adhesives on a PRE. (Filing No. 1.) Intertape has defended the validity and enforceability of the '416 patent and raised a counterclaim against Berry for directly infringing upon its patent rights. (Filing No. 11 at ECF pp. 17–19.)

The discovery process that followed has been sharply contested. So, during a settlement conference in June of 2013, I instructed the parties that any discovery on damages should be reciprocal. In other words, by serving a discovery request on Party B, Party A obligates itself to respond to an identical request from Party B. Discovery concerning damages requires the parties to exchange sensitive financial information, and a reciprocal discovery policy discourages abusing the discovery process to gain a competitive business advantage.

In August of 2013, Intertape requested extensive financial information concerning the costs, production, sales, licensing, marketing, and promotion of products Berry prepares using its PREs. (*See* Filing No. 207-3, Interrogatory

No. 21; Filing No. 200-2, Requests Nos. 26, 28, 29, 34.)  For comparison's sake, Intertape requested data for the same products beginning one year before Berry began making them with PREs.  (*See* Filing No. 200-2, Requests Nos. 27, 31–33, Interrogatories Nos. 24–25.)  Berry responded with some objections but produced voluminous evidence.  (*See* Filing No. 200 at ECF p. 7.)

Berry served requests on Intertape in November of 2013 that were facially similar but subtly—and significantly—different.  Whereas Intertape explicitly limited its requests to data concerning products made on the PRE, Berry requested data concerning all of Intertape's tape products.  (*Compare* Filing No. 207-3, Interrogatory No. 21, *to* Filing No. 200-4, Interrogatory No. 23.)  Intertape objected on grounds of overbreadth.  (*See, e.g.*, Filing No. 200-5, Responses to Request No. 65, Interrogatory No. 23.)  Berry has since indicated that it would accept data concerning only Intertape's duct tape products (Filing No. 200-6 at ECF p. 5), but it never has served a revised discovery request.

In the ensuing six months, Intertape has refused to produce data concerning even its duct tapes.  Intertape has raised two defenses.  First, Intertape characterizes financial data concerning its duct tape products as irrelevant to determining damages.  (See Filing No. 207 at ECF pp. 12–18.)  In Intertape's view, the fact finder can calculate damages—the value of a reasonable royalty—strictly from Berry's data, so Intertape's financial data are immaterial.  (*See id.* at ECF pp. 17–18.)  Second, Intertape argues that Berry's requests fall beyond the scope of the reciprocal discovery rule.  (*See id.* at ECF pp. 8–12.)  That is, Intertape limited its requests to products manufactured on

3

a PRE, but Berry's requests are not so limited. (*See* *id.*; Filing No. 200-6 at ECF p. 4.)

Unable to resolve this dispute, Berry asks the Court to compel Intertape to produce financial data concerning its duct tapes produced from 2009 until the present. (Filing No. 200 at ECF p. 15.)

## II. Legal Standard

A party to litigation is entitled to discover from his adversary "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). A party who resists a discovery request bears the burden of demonstrating why the requested materials should be indiscoverable. *See* Fed. R. Civ. P. 26(b)(5)(A), 26(c)(1); *see also Graham v. Casey's General Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002).

Berry seeks damages only in the amount of a reasonable royalty for use of its invention. (Filing No. 207 at ECF p. 13.) The parties agree that a reasonable royalty equates to the price at which the infringer would have agreed to purchase—and the patentee would have agreed to sell—a license to use the invention. *E.g.*, *Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284, 1292 (Fed. Cir. 2007); *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384 (Fed. Cir. 2001). To determine this value, the fact finder must imagine a hypothetical negotiation between the parties when the infringement began. *Mitutoyo*, 499 F.3d F.3d at 1292; *Interactive Pictures*, 274 F.3d at 1384. Considerations important to such a negotiation may include, for example:

4

- whether the parties compete in the same territory and in the same line of business;

- how the licensee's use of the invention would influence both parties' sales of other products;

- the term of the license;

- the "utility and advantages" of using the invention over older alternatives;

- "any evidence probative of the value" of the infringer's use of the invention;

- what portion of the licensee's realizable profit should be credited to its use of the invention as opposed to other factors or market forces;

- "[t]he opinion testimony of qualified experts";

- the parties' relative bargaining strength; and

- "any other economic factor that normally prudent businessmen would, under similar circumstances, take into consideration in negotiating the hypothetical license."

*Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120–21 (S.D. N.Y. 1970), *cited with approval in, e.g.*, *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed Cir. 2011) ("Those factors properly tie the reasonable royalty calculation to the facts of the hypothetical negotiation at issue").

### III. Discussion

Intertape's financial data concerning duct tape production and sales are relevant to calculating the value of a reasonable royalty. And, both relevance and reciprocity entitle Berry to discover those data ranging from one year before it began using its PRE until the present. But, financial data concerning

5

other times and other products exceed the scopes of both relevance and reciprocity.

### A. Berry is entitled to information concerning Intertape's duct tape production and sales.

Intertape must disclose some financial data if the fact finder is to calculate the value of a reasonable royalty. Intertape concedes that a reasonable royalty equates to the price of a license the parties would have negotiated, *Interactive Pictures*, 274 F.3d at 1384, *cited in* Filing No. 207 at ECF p. 14, and a negotiation is a two-player game. Quite plainly, the fact finder cannot determine what price Intertape would have negotiated for a license without some sense of its financial interests. When Intertape limited itself to reasonable-royalty damages (*see* Filing No. 207 at ECF p. 13), it embraced this standard and therefore subjected itself to disclosing some financial data.

Berry is entitled to discover data concerning Intertape's duct tapes. Because Berry has used the patented process to manufacture duct tapes, data about Intertape's duct tape production and sales could shed light on several of the *Georgia-Pacific* factors, including:

- the extent to which Berry and Intertape sell duct tapes in the same markets;
- the extent to which Berry's use of the PRE has affected (positively or negatively) Intertape's sales of duct tapes; and
- Intertape's bargaining strength.

*See* 318 F. Supp. at 1120–21. Because these data are relevant to calculating damages, Berry is entitled to discover them regardless of whether they reciprocate the data Intertape requested. *See* Fed. R. Civ. P. 26(b)(1).

6

Data concerning Intertape's non-duct tape products would exceed the scopes of both relevance and reciprocity. Berry appears to have conceded as much in its brief ([Filing No. 200 at ECF p. 10 n.2](), [15]()) and by asking Intertape if it would agree to produce data concerning duct tapes alone ([Filing No. 200-6 at ECF p. 5]()). If any doubt remains, I find that Intertape's financial data concerning products Berry has not manufactured with a PRE would not be appreciably helpful in determining the parties' interests in licensing Berry to use the PRE.[1] As to reciprocity, Intertape limited its requests to products Berry produces on its PRE[2], and those happen to be only duct tapes. To reciprocate, Berry would need to limit its requests to either products manufactured on a PRE (what Intertape requested from a semantic standpoint) or duct tapes (what Intertape requested from a practical standpoint). Because Intertape has not yet launched its PRE-manufactured tape lines, Intertape could reciprocate only requests for data concerning duct tapes.

In sum, Berry may discover data concerning Intertape's duct tape production and sales because they are relevant to calculating Intertape's

---

[1] Information concerning Intertape's other products may be probative of Intertape's bargaining power, *see [Georgia-Pacific 318 F. Supp. at 1121]()*, but the same would be true of virtually any of Intertape's financial data. Should either party wish to open Pandora's box, I reiterate that discovery on damages is subject to reciprocity.

[2] Berry argues that Intertape's requests extended beyond PRE-manufactured products because it sought information from the year before Berry began using its PRE (when, of course, it manufactured no products on a PRE). But Intertape did not, as Berry implies, request information concerning every one of Berry's products. Rather, Intertape requested (a) data for all the products Berry has manufactured on the PRE, and (b) data for the <u>exact same group of products</u> in the year before Berry began making them on the PRE. (*See* [Filing No. 207-3, Interrogatory No. ¶ 21](); [Filing No. 200-2, Requests Nos. 31–33](), [Interrogatories Nos. 24–25]().)

7

damages.  But, neither relevance nor reciprocity entitles Berry to discover information concerning other Intertape products.

### B. Berry is entitled to information concerning Intertape's duct tape production and sales from one year before Berry began using its PRE until now.

Intertape must disclose data concerning its duct tapes for the same periods for which it requested data from Berry: from one year before Berry began using its PRE until the present.  Intertape's pre-infringement data obviously would be relevant to determining Intertape's interests and position in a negotiation taking place at the time infringement began.  Post-infringement data would be relevant to determining Intertape's interests and position in hypothetical continuing negotiations.  *Georgia-Pacific* contemplates that every license is not perpetual: It includes "the term of the license" among its considerations in calculating damages.  318 F. Supp. at 1120.  So, I could imagine expert testimony—another *Georgia-Pacific* factor, *see id.*—suggesting the most likely and prudent agreement given the parties' positions when infringement began would have been a short-term license, paving the way for the parties to negotiate an extension at the end of the term.

Intertape's post-infringement data would be useful in determining the value of extending the hypothetical license.  For example, examining Intertape's sales figures may provide context to show whether fluctuations in Berry's sales could be attributed to the PRE alone or also to other market forces.  *See id.* Intertape's data also could quantify the impact of Berry's PRE use on

8

Intertape's place in the duct tape market—a relevant fact that could not be deduced from Berry's data alone.  *See id.*

Even if Intertape's post-infringement data were not relevant, they still would be subject to reciprocal discovery.  Berry has produced—at Intertape's request—three years worth of data from its PRE-manufactured duct tape line just as Intertape is preparing to launch its own PRE-manufactured duct tape line.  If, as Intertape suggests, the fact finder is limited to considering a hypothetical negotiation when infringement began in June of 2010, then Berry's post-infringement data also would be temporally irrelevant: Neither party's post-infringement figures would have been available at the hypothetical negotiation.  But Intertape nevertheless requested post-infringement data.

Requesting discovery and then arguing that the information requested is indiscoverable smacks of bad faith and illustrates the purpose behind reciprocity: Because turnabout is fair play, parties should think twice before seeking excessive data not germane to damages but useful from a business perspective.  By requesting post-infringement data from Berry, Intertape has embraced the risk of disclosing its own post-infringement data to Berry.

Therefore, both relevance and reciprocity allow Berry to discover data concerning Intertape's duct tape production and sales from one year before Berry began using its PRE until the present.  Earlier data is neither relevant to Intertape's damages nor reciprocal to Intertape's requests.

**IV. Conclusion**

I find that data concerning Intertape's duct tape production and sales from one year before Berry began using its PRE until the present would be relevant to determining Intertape's damages and reciprocal to the financial information Intertape has requested from Berry. I therefore **GRANT** Berry's motion to the extent it asks the Court to compel Intertape to produce such data. I **DENY** Berry's motion to the extent it asks the Court to compel Intertape to produce data concerning other products or times.

I **ORDER** Berry to serve Intertape a revised set of discovery requests within seven days. I further **ORDER** Intertape to respond to Berry's revised requests in a manner consistent with this Entry. I will not compel Intertape to comply with requests that are untimely or inconsistent with this Entry.

**SO ORDERED** this 16th day of May, 2014.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**