UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| BERRY PLASTICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:10-cv-00076-RLY-WGH |
| | ) | |
| INTERTAPE POLYMER CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON BERRY PLASTICS CORPORATION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY and BERRY'S MOTION FOR ORAL ARGUMENT**

The court held a jury trial in this patent infringement lawsuit between Intertape Polymer Corporation, the owner of United States Patent No. 7,476,416 ("'416 patent"), and its competitor in the adhesives industry, Berry Plastics Corporation, from November 3, 2014, to November 17, 2014. The jury found that Intertape failed to prove that Berry infringed its patent, and that Berry failed to prove that Intertape's '416 patent was invalid. (*See generally* Filing No. 378, Verdict Form). Berry's inequitable conduct claim against Intertape remains for the court's resolution. In the present motion,[1] Berry argues that Intertape waived the attorney-client privilege as to certain evidence bearing on the inequitable conduct claim and asks the court to compel Intertape to produce that

---

[1] A hearing on all pending motions is scheduled for August 26, 2015, at 10:00 a.m. The court elects to rule on this motion, however, because it affects the remaining inequitable conduct claim.

1

evidence. The court, having read and reviewed the parties' submissions, the designated evidence and the applicable law, now **DENIES** Berry's Motion to Compel and **DENIES** Berry's Motion for Oral Argument.

**I.   Background**

In *Therasense, Inc. v. Becton, Dickinson & Co.*, the Federal Circuit "tighten[ed] the standards" for proving inequitable conduct "in order to redirect a doctrine that has been overused to the detriment of the public." 649 F.3d 1276, 1290 (Fed. Cir. 2011) (en banc). The accused infringer must now prove "by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* As Magistrate Judge Lynch observed, "the heightened standards of *Therasense* make inquiry into counsel's and client's patent prosecution decisions – and the knowledge base underlying them – a natural avenue of discovery." *In re Method of Processing Ethanol Byproducts and Related Subsystems ('858) Patent Litigation*, Master Case Nos. 1:10-ML-02181-LJM, 1:13-mc-00058-LJM-DML, 2013 WL 3820593, at *8 (S.D. Ind. July 23, 2013).

Berry has traveled down this avenue several times before. On July 18, 2014, the Magistrate Judge denied Berry's motion to compel based on much of the same deposition testimony at issue here. (Filing No. 289, Entry on Berry's Motion to Compel Production of Documents and Testimony). The Magistrate Judge determined that Intertape had not asserted prosecution counsel's advice, nor prosecution counsel's good faith, as a defense to Berry's charges of inequitable conduct. As is relevant to the present motion, the Magistrate Judge specifically rejected the line of cases cited by Berry that found the

privilege waived based on a patentee's responses to its opponent's deposition questions. (*Id*. at 9). Berry filed an objection to the Magistrate Judge's ruling, which the court overruled. (Filing No. 313, Order on Berry's Objections to the Magistrate's Order Denying its Motion to Compel).

In addition, prior to trial, the parties argued over the deposition designations of numerous witnesses, including Mr. Levy. Berry moved to strike Intertape's counter-designations or, in the alternative, moved to compel the production of documents based on waiver of attorney-client privilege. (Filing No. 325, Berry's Motion to Strike Intertape's Deposition Designations). Intertape asserted that its counter-designations related only to its inequitable conduct claim, and that the court had already determined that Intertape had not waived privilege with respect to Mr. Levy's responses. (Filing No. 344, Intertape's Memorandum in Opposition to Berry's Motion to Strike). Intertape also moved to bifurcate the inequitable conduct claim from the invalidity and infringement claims for purposes of trial.

At the Final Pre-Trial Conference, the court granted Intertape's motion to bifurcate, but ordered Mr. Levy to be "on call" as a witness. (Filing No. 349, Transcript of Final Pretrial Conference and Motions Hearing at 58). Over Intertape's objection, the court allowed Berry to call Mr. Levy to testify at trial, but limited his testimony to issues related to Berry's invalidity defense, thus mooting the dispute over the deposition designations of Mr. Levy. (Filing No. 380, Order on Pending Motions at 2-3). Berry now argues that Intertape's "voluntary introduction" of Mr. Levy's pre-trial deposition testimony and trial testimony placed Mr. Levy's "knowledge and actions at-issue in an

attempt to negate Berry's invalidity and inequitable conduct claims constitutes waiver." (Filing No. 467, Berry's Reply in Support of Motion to Compel at 2).

## II. The Attorney-Client Privilege

"In patent cases, regional circuit law governs non-patent issues, while Federal Circuit law governs issues of substantive patent law." *Medicines Co. v. Mylan, Inc.*, 936 F. Supp. 2d 894, 899 (N.D. Ill. 2013) (citing *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000)). Whether Intertape has waived privilege by defending against Berry's allegations of inequitable conduct is an issue of substantive patent law, and thus, Federal Circuit law applies. *Id*. at 900.

Waiver may be express or implied. *Wi-LAN, Inc. v. Kilpatrick Townsend & Stockton LLP*, 684 F.3d 1364, 1370 (Fed. Cir. 2012) (distinguishing between an express and implied waiver). A party expressly waives privilege by disclosing privileged information to the opposing party. *Id.* at 1367. A party does not expressly waive privilege by merely "indicating the fact or topic of a confidential communication with an attorney." *Chicago Bd. Options Exch., Inc. v. Int'l Secs. Exch.,* LLC, No. 07 C 623, 2008 U.S. Dist. LEXIS 60457, at *9 (N.D. Ill. Aug. 8, 2008); *see also Brigham and Women's Hosp., Inc. v. Teva Pharm. USA, Inc*., 707 F. Supp. 2d 463, 470 (D. Del. 2010) ("Generally, disclosure of the substance of a privileged communication will result in waiver, whereas disclosure of the mere fact that such communication took place will not.").

A party may impliedly[2] waive privilege when the party "makes assertions, the truth of which can only be assessed by examination of privileged communications." *Blue Lake Forest Products, Inc. v. United States*, 85 Fed. Cl. 779, 783 (2007); *see also Murata Mfg. Co. v. Bel Fuse, Inc.*, No. 03 C 2934, 2007 U.S. Dist. LEXIS 17224, at *19 (N.D. Ill. Mar. 8, 2007) ("The 'at issue' waiver of the attorney-client privilege is implied when a party voluntarily injects a new factual or legal issue into a case, the truthful resolution of which will require examining confidential communications." (citing *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987))). A party does not impliedly waive privilege merely by raising a particular claim or defense that makes privileged communications relevant. *Chamberlain Grp. v. Interlogix, Inc.*, No. 01 C 6157, 2002 U.S. Dist. LEXIS 5468, at *8 (N.D. Ill Mar. 26, 2002) ("Relevancy is not the test for an implicit waiver of attorney-client privilege."). "A party must affirmatively use privileged communications to defend itself or attack its opponent in the action before the implicit waiver rule is applicable." *Id.* at **8-9.

Finally, a party may waive privilege by announcing that it will rely on advice of counsel to establish a defense. *In re Echostar Commc'ns Corp.*, 448 F.3d 1294, 1299, 1301 (Fed. Cir. 2006). Under the Magistrate Judge's Order, "[a] party should not be found to have waived privilege through this doctrine unless it has represented that it would have disclosed material references but for counsel's advice to do otherwise." (Entry on Berry's Motion to Compel at 6).

---

[2] This type of waiver is often referred to as the "at-issue" waiver. *Pyramid Controls, Inc. v. Siemens Indus. Automations, Inc.*, 176 F.R.D. 269, 271 (N.D. Ill. 1997).

5

## III. Discussion

Berry' motion invokes both express and implied waiver, and waiver based on the advice-of-counsel defense. The court will begin with the argument pertaining to implied waiver.

### A. Implied Waiver

Berry contends Intertape placed Mr. Levy's beliefs, opinions, and intentions at issue on two topics: (1) his alleged belief that the evidence in his possession of the Beiersdorf PRE mastication properties were inconclusive such that he did not need to disclose that evidence to the USPTO; and (2) his alleged intent that certain portions of the "Detailed Description of the Invention" section of the '416 patent be considered disclosures to the USPTO of the prior art status of PRE systems incorporating the claimed spindle.

#### 1. Good Faith Defense

Part of Berry's inequitable conduct claim is that Intertape had evidence that the PRE process claimed in United States Patent No. 6,506, 447 (the "Beiersdorf patent"), actually did masticate rubber but intentionally withheld that evidence from the patent examiner. To understand this argument, it must be put in context.

During prosecution of the '416 patent application, a significant piece of prior art was the Beiersdorf patent, which claimed that the patented PRE process was "mastication-free." The issue before the patent examiner was whether it would have been obvious to modify the Beiersdorf process by selecting the particular back-cut spindle recited in Intertape's process given the other teachings of the Beiersdorf patent. Intertape

6

argued that the Beiersdorf patent "taught away" from mastication, whereas Intertape's process purposefully sought to increase mastication using back-cut spindles. (ITX-1 at 488-90; Filing No. 401, Levy Trial Test. at 21-22).

At the November 2014 trial, Berry argues that Intertape asserted a good faith defense to Berry's inequitable conduct claim by voluntarily asking Mr. Levy, "Now, did you have any concrete information that the result the Beiersdorf process might produce was different from what the Beiersdorf process actually taught?" Mr. Levy answered, "No." (Levy Trial Test. at 88).

The court finds this simple question and answer insufficient to establish waiver for several reasons. First, there is nothing about the question and answer which suggests that Intertape will rely on Mr. Levy's testimony to show that it had a good faith basis for withholding the information. It was a simple "yes/no" question.

Second, Berry, not Intertape, called Mr. Levy as a witness, and asked him questions regarding his personal understanding and beliefs with respect to the mastication properties of Beiersdorf's prior art process. Those questions included:

> Q: Now, at the time you were making the statement to the Patent Office, you understood that the Beiersdorf process, the '447 process, to actually exclude mastication of the non-thermoplastic elastomer, correct?
>
> A: That's not correct. The Beiersdorf patent teaches mastication free, a mastication-free process.
>
> Q: All right. You understood that the Beiersdorf patent actually says in the text of the patent "mastication free." It's actually in the claim, mastication free, correct?
>
> A: Correct.

7

> Q: Okay. Now, but you also had evidence that the statement was incorrect, that the actual process does include mastication, correct?
>
> A: I do not agree with that statement.

(*Id.* at 22).

> Q: And then you also were involved in reviewing this 3M opposition, and you would agree that both you, on behalf of Intertape and those applicants, and 3M believed that the process disclosed in the Beiersdorf patents actually masticates the rubber, right?
>
> A: Personally, my personal belief you're asking for now?
>
> Q: Sir, you believed the same as 3M believed, that the process disclosed in the Beiersdorf patents actually masticates the rubber, right?
>
> A: I believe my beliefs are privileged.

(*Id.* at 53; *see also id.* at 55-57) (Berry asked whether "that belief was made known to the examiner," to which Intertape objected). Thus, although Berry called Mr. Levy as a witness in support of its invalidity case, some of the questions posed were directed more to Berry's inequitable conduct defense than to its invalidity defense. The court interprets Intertape's question as one meant to dispel the impression by Berry that Intertape obtained the patent by improper means.

Third, Intertape represents that it will not rely on Mr. Levy's lack of knowledge about mastication in the Beiersdorf process to defend that part of the claim. Instead, it will rely on the testimony of Richard St. Coeur, one of the '416 inventors. St. Coeur will testify about the mastication studies it performed at Battenfeld Extrusionstechnik GmbH in Germany prior to filing Intertape's patent application. Because Intertape plans to refute Berry's allegations of inequitable conduct without any reliance on privileged

8

communications, the court finds Intertape did not impliedly waive privilege with respect to its question to Mr. Levy at trial. *See Murata*, 2007 U.S. Dist. LEXIS 17224, at *22 (a party does not impliedly waive privilege if a party "can, and does, point to evidence other than privileged communications to substantiate its position").

In addition, Berry argues that Intertape waived privilege with respect to the counter-designating deposition testimony from Mr. Levy for use at trial. Pursuant to Federal Rule of Civil Procedure 32(a)(6), Intertape submitted its deposition designations in response to Berry's designation of Mr. Levy's deposition testimony on the same topics. Intertape did so to put Berry's designations into context. The testimony Berry relies upon is essentially the same testimony previously found by the Magistrate Judge and affirmed by this court as insufficient to show waiver. Furthermore, since Mr. Levy testified at trial, the deposition designations and counter-designations were not submitted as evidence at trial. Intertape did not waive privilege under these circumstances.

### 2. Prior Art

Another basis of Berry's inequitable conduct claim is its contention that "Intertape failed to disclose to the USPTO that all of the equipment described in the '416 patent existed in the prior art." (Filing No. 452, Berry's Memorandum in Support of Motion to Compel at 14). Berry's charge is directed to a statement in the specification that states, "Planetary roller extruders having double transversal mixing spindles are commercially available from Rust-Mitschke-Entex." (ITX-66, '416 patent, col. 4, ll: 50-52). Berry argues that Intertape waived privilege with respect to communications on this subject because it asserted at trial that "Mr. Levy did not have the requisite intent to deceive

9

because he allegedly intended a large portion of the '416 patent's 'Detailed Description of the Intention' to be a prior art disclosure to the Examiner despite not being labeled as such." (Berry's Memorandum in Support at 15).

Like Berry did with the Beiersdorf process, Berry, not Intertape, raised the issue of Mr. Levy's beliefs about the meaning of the phrase "commercially available" as used in the context of the '416 patent. Berry's counsel asked:

> Q: What was the basis of your understanding that that was prior art?
>
> A: Well, it was indicated that it was a commercially available piece of equipment. When we say it is prior art with respect to our client's claims, our client is claiming a process. They did not invent the equipment; the equipment was acquired on the market. So our client's invention is a process. The equipment is commercially available.
>
> Q: Okay sir. Now, whenever you say "commercially available," you understand that commercially available is not necessarily prior art, correct?
>
> A: I'd say 95 percent of the time it is prior art but –
>
> Q: Okay. But, sir, simply saying that something is commercially available does not make it prior art under the U.S. patent laws, correct?
>
> A: If it existed before the patent application was filed and the invention was invented, it is prior art, yes.
>
> Q: Okay. But again back to my statement, simply saying something is commercially available does not mean it's prior art, according to the U.S. patent laws, right?
>
> A: I think you have to construe the sentence in context –
>
> Q: Well, sir, you would agree –
>
> A: -- and an examiner reading the sentence within the context of the Intertape patent would understand that the equipment was available and was prior art.

(Levy Trial Test. at 6).

> Q: And when you filed that application, you understood that section of the patent to actually be prior art to your applicant's claims, correct?
>
> A: Correct.
>
> Q: Did you tell the patent examiner during prosecution that that portion of the specification of the '416 patent was actually prior art to your applicant's claims?
>
> A: We provided evidence that effectively did that, yes.

(*Id*. at 13).

> Q: And you'll agree that the sentence doesn't say "prior art," does it?
>
> A: No, but it would be read as indicating there's prior art.
>
> Q: Whenever someone reads that sentence, all they see is "commercially available," correct? They don't see "prior art to the claims"?
>
> A: But this is written – this is an examiner reading this.
>
> Q: Right. And this examiner, you believe, would have picked out a statement in the detailed description of the invention that is one sentence and said, "Aha, that is not prior art," even though it doesn't say that?
>
> A: Absolutely.

(*Id*. at 25).

> Following this line of testimony, Intertape asked Mr. Levy:
>
> Q: And did you disclose prior art to the Patent Office in the course of the application for the '416 patent?
>
> A: Definitely.
>
> Q: Where in the patent application did you disclose that prior art?
>
> A: I think it's in a portion of the patent that we looked at a little earlier in column 4, roughly line 51, where we defined the – we defined the helical

11

>spindle or the back-cut spindle as being commercially available from Entex.
>
>Q: Okay. . . but why would you disclose some relevant prior art information in the written description of the patent and other prior art information through an information disclosure statement?
>
>A: Well, when publication are – have authors and are dated and there's adequate supplementary information to put into the information disclosure statement form, we might use an information disclosure statement. On the other hand, when you have a piece of prior art that is not a written document and not dated and it relates to the – it relates – it's useful in explaining how to practice your invention, it's very convenient to treat the subject matter – make that disclosure of prior art in your patent application.

(*Id*. at 73-74).

Inequitable conduct was not before the jury, yet Berry's questions to Mr. Levy raised the issue of his intent in disclosing the PRE equipment in the specification. Intertape's questions on cross-examination were meant to bolster Mr. Levy's standing with the jury, and cannot be construed as a voluntary waiver of the attorney-client privilege.

### B. Advice of Counsel Defense

Berry also argues that Intertape asserted the advice of counsel defense at trial through the testimony of John Tynan, one of the inventors of the '416 patent. Specifically, he testified, "Any prior art that I had or our team had, we turned over to legal counsel, and they would have handled the communication with the Patent Office." (Filing No. 391, Tynan Tr. Test. at 124). The Magistrate Judge previously rejected Berry's argument based upon the same testimony, characterizing the deposition testimony of Mr. Tynan as "benign factual statements" that "do not indicate in the least

that Intertape knew of prior art, disclosed it to prosecution counsel, and then withheld it from the PTO on counsel's decision or advice." (Entry on Motion to Compel at 7). The court rejects this argument for the same reasons.

Berry also argues that "Intertape then further pursued its reliance on advice of counsel defense by soliciting testimony from Mr. Levy justifying his decisions on why he did or did not disclose various prior art information." At trial, Mr. Levy explained why he disclosed certain prior art references, including the Beiersdorf patent (Levy Trial Tr. at 68) (to be "helpful to the examiner"), and a prior art Entex application (*id*. at 71) (to "facilitate the examiner's review"). And as discussed previously, Mr. Levy explained that he had no "concrete information" that the Beiersdorf process actually masticated rubber. (*Id*. at 88). This testimony, even in combination with Mr. Tynan's testimony, does not indicate that Intertape is advancing an advice of counsel defense to Berry's inequitable conduct claim. Indeed, the only "prior art" Berry points to is the mastication evidence Intertape derived as a result of the Battenfeld trials. Accordingly, Intertape has not waived privilege by these statements.

**C.    Express Waiver**

Finally, Berry argues Intertape expressly waived privilege because Mr. Levy answered the following question, posed by Berry, without objection:

Q:  Okay.  Who told you that the Entex equipment was prior art for processing non-thermoplastic elastomers?

A:  Well, John Tynan certainly told me that the Entex spindle was commercially available and could be used to modify the Beiersdorf PRE.

13

(Levy Tr. Test. at 28). Berry then asked, "What did Mr. Tynan tell you as to what Entex had previously been doing with its Noppenspindel?" Intertape promptly voiced an objection based on the attorney-client privilege.

The court finds Intertape did not expressly waive privilege through Mr. Levy's testimony. First, the testimony, solicited by Berry, did not call for the disclosure of privileged information. Second, when the implication of a privilege communication arose, Intertape promptly objected. Accordingly, Berry's motion to compel is **DENIED**.

### IV. Conclusion

Contrary to Berry's characterization, "the circumstances and factual landscape" have not "significantly changed since July 2014 when Magistrate Hussmann entered his Order." Accordingly, Berry's Motion to Compel Production of Documents and Testimony (Filing No. 451) is **DENIED**. Berry's Motion for Oral Argument on the same (Filing No. 453) is likewise **DENIED**.

**SO ORDERED** this 7th day of July 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.