UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| BERRY PLASTICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:10-cv-00076-RLY-WGH |
| | ) | |
| INTERTAPE POLYMER CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON INTERTAPE POLYMER CORPORATION'S MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF DR. ELDRIDGE MOUNT**

Defendant, Intertape Polymer Corporation, moves for an order in limine excluding the testimony of Dr. Eldridge Mount, an expert retained by Berry Plastics Corporation who gave an opinion on the invalidity of the '416 patent during the jury trial held in November 2014. Dr. Mount is currently listed on Berry's witness list as a "may call" witness for the inequitable conduct bench trial. (*See* Filing No. 483). Intertape moves to exclude his testimony for four reasons: (1) Dr. Mount has no first-hand knowledge of the facts and circumstances that are at issue for the inequitable conduct claim; (2) Dr. Mount has not previously disclosed any opinion with respect to the issue of inequitable conduct; (3) Dr. Mount's opinions are not relevant and are, in fact, prejudicial on the issue of inequitable conduct; and (4) Berry's use of the "may call" designation will require Intertape to expend time and resources preparing for live testimony on unspecified topics

1

that may never occur. For the reasons set forth below, Intertape's motion is **GRANTED in part**.

**I.     Discussion**

One of the key issues of Berry's inequitable conduct trial is whether the claimed spindle—the double transversal mixing spindle with a plurality of back-cut helical flights—was sufficiently disclosed as prior art during the prosecution of the '416 patent. Intertape argues the claimed spindle was sufficiently disclosed because the patent states that double transversal mixing spindles were commercially available, and because the '416 patent describes other types of spindles, including back-cut spindles, as being available alternatives. (*See* '416 patent, col. 4, ll: 50-51) ("Planetary roller extruders having double transversal spindles **28** are commercially available from Rust-Mitschke-Entex."); *see also id*., col. 3, ll: 65-col. 4, ll: 1-2) ("The planetary spindles **28, 30** can exhibit many different tooth geometries, e.g., full helical flights (Planetspindel) **30**, double transversal helical flights (also known as back-cut spindles or Noppenspindel) **28**, or zoned helical flights (Igelspindel), etc."). Relying in part on the expert report and the testimony of Dr. Mount, Berry argues the claimed spindle was not sufficiently disclosed as prior art. In his expert report, Dr. Mount stated:

> At no time during the prosecution of the '416 patent did the '416 patent applicants make the Examiner aware of the double transversal mixing spindles' status in the prior art, including all of the information they had derived from Entex and Battenfeld regarding their prior art double transversal mixing planetary spindles.

(Filing No. 258, Expert Report of Eldridge M. Mount, III at 12, ¶ 1). He later testified:

> Q: So your – so it's your opinion that the examiner was not aware that back-cut mixing elements were aware – or were available in the prior art at the time of examination of the patent?
>
> A: That the Noppenspindel wasn't, which this is addressed to, for which the '416 patent was specifically addressed to.
>
> Q: It's your opinion that the '416 patent is limited to use of just the Noppenspindel? . . .
>
> A: I think it's difficult to determine which exact spindle it's limited to. They describe the use of many different types of spindles. One of the – may be in four, standard planetary spindle, they have back-cut spindles, but the – it's in the detailed description of the invention.
> So it wasn't clear, I don't think, that – the examiner that it was separate, because why would the examiner have used the '462 patent as an example from a twin screw of the back-cut spindle when she – when the examiner could have used the spindles described here in the description of the invention.
> Yesterday, Dr. Rauwendaal contended that these were all prior art, but it is in the detailed description of the invention, so I'm not sure that that's clear. And because of that, I don't think the examiner was working under the presumption that they were prior art spindles.[1]

(Filing No. 275-4 at 266).

Dr. Mount is not an expert in patent law and has no personal knowledge of the facts and circumstances surrounding the prosecution of the '416 patent. Aside from the above, the court is not clear what more Dr. Mount could add to Berry's inequitable conduct claim were he to testify at trial. Neither is Intertape. Thus, on October 29, 2015,

---

[1] Over Intertape's objection, the court did not strike this last sentence, explaining that his opinion on whether the examiner understood the spindles described in the patent were prior art spindles was subject to cross-examination. (Filing No. 312 at 14).

Intertape asked Berry on what subjects Dr. Mount may be called to testify. (Filing No. 490-1 at 4). Berry responded:

> As you know, the fact witnesses relating to the inequitable conduct in procuring the '416 patent are Intertape's employees and counsel. Intertape has identified Tynan, St. Couer [sic] and Kovach as witnesses it will call. Berry does not control these witnesses, thus Berry is unsure what new excuses they may proffer regarding concealment and/or misrepresentation of material information. Dr. Mount may be called to provide expert testimony regarding [the inventors'] testimony or interpretation of prior art. Thus, we do not presently know whether Dr. Mount will be called, or on what particular subjects.

(*Id.* at 3). Intertape understood Berry's response as representing that "Dr. Mount will only be called if need [sic] to rebut new testimony from Intertape's witnesses that is different from their prior deposition and/or trial testimony." (*Id.*). Berry did not agree with that interpretation, and stated that because Berry did not know what issues will arise at trial, it "cannot tell [Intertape] what testimony we may need or want from Dr. Mount's expert perspective." (*Id.* at 2). The court understands Berry's position, but it leaves Intertape in the precarious position of trying to anticipate what might be asked based upon what might be said at trial.

In an effort to resolve this issue, Intertape states that it has no objection to Berry's designation of Dr. Mount as a "may call" witness if Berry would confirm that it identified Dr. Mount as a "may call" witness to respond to new testimony on topics which Intertape's witnesses did not testify to in their depositions or at the prior jury trial. Intertape's proposed resolution makes sense. Dr. Mount testified at length regarding his interpretation of the prior art. (*See* Filing No. 399). There is no reason to cover that testimony once again.

4

## II.	Conclusion

The court finds Dr. Mount can remain on Berry's witness list as a "may call" witness.  Dr. Mount may testify only with respect to new topics which Intertape's witnesses did not testify to in their depositions or at the prior jury trial.  Intertape's Motion in Limine (Filing No. 489) is therefore **GRANTED in part**.


**SO ORDERED** this 30th day of November 2015.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.