UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| BERRY PLASTICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:10-cv-00076-RLY-MPB |
| | ) | |
| INTERTAPE POLYMER CORPORATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON INTERTAPE POLYMER CORPORATION'S MOTION TO RECONSIDER ENTRY OF JUDGMENT AS A MATTER OF LAW THAT U.S. PATENT NO. 7,476,416 IS INVALID AS OBVIOUS**

The court held a jury trial in this patent infringement lawsuit between Berry Plastics Corporation and Intertape Polymer Corporation from November 3, 2014, to November 17, 2014. The jury found, *inter alia*, that Intertape's United States Patent No. 7,476,416 was not obvious. On December 15, 2014, Berry renewed its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) that the '416 patent is invalid as obvious. The parties orally argued their case on August 26, 2015, and on September 30, the court granted Berry's Renewed Motion for Judgment as a Matter of Law that Patent No. 7,476,416 Is Invalid as Obvious. (Filing No. 478).

On March 22, 2016, Intertape filed the present motion to reconsider on grounds that the court inadvertently invalidated the entire patent rather than the asserted claims presented at trial. Upon review, the court's Entry addressed independent claims 1 and 21,

1

but failed to specifically mention the dependent claims at issue. The court addresses them now.

## I. Background

Briefly, the '416 patent describes and claims a continuous process for preparing adhesive tape from raw materials, including non-thermoplastic elastomers (i.e., natural rubber) and tackifying resins, using a planetary roller extruder ("PRE") that includes planetary mixing spindles with back-cut helical flights. The named inventors are John K. Tynan, Jr., Richard W. St. Coeur, David M. Kovach, and Thomas Lombardo. ('416 patent, ITX-66; Filing No. 391, Tynan Tr. at 36). At the time the patent was issued, the inventors were employees of Intertape. (*Id.*).

Berry currently manufactures rubber-based adhesives using a PRE with back-cut spindles in its Franklin, Kentucky facility. (Filing No. 398, Scates Tr. at 7, 18). Intertape claims the Berry PRE infringes its '416 patent. Berry claims it does not infringe the '416 patent or, in the alternative, the '416 patent is invalid.

In support of its obviousness defense at trial, Berry relied on number of prior art references or combinations of references, including: (1) U.S. Patent No. 6,506,447, known as the Beiersdorf patent (ITX-7); (2) Japanese Patent Application 11-216764 ("Sekisui") (PTX-264); (3) "Rubber – the tailor-made material, Compounding of Elastomer Masses in a Planetary Roller Extruder" ("DIK Paper") (PTX-37); (4) German Patent No. DE 43 08 098 ("Entex '098 patent") (PTX-291); (5) United States Patent No. 5,539,033 ("3M patent") (PTX-266); (6) Emails sent from Entex to Intertape on August 29, 2003 (PTX-24 and PTX, 140); and (7) the book, *Understanding Extrusion*, authored

2

by Intertape's expert, Dr. Rauwendaal (PTX-305). The most significant reference is the '447 patent.

The court incorporates by reference the balance of the facts from its Entry on Berry's Renewed Motion for Judgment as a Matter of Law.

## II. Legal Standards

At any time prior to the entry of final judgment, the court may modify or vacate its own orders if those orders are based on a mistake or an error of law. Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims . . . ."). "A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008).

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, "a district court may enter judgment against a party who has been fully heard on an issue during a jury trial if 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (quoting Fed. R. Civ. P. 50(a)). In resolving a Rule 50 motion, the court construes the evidence strictly in favor of the party who prevailed before the jury and examines the evidence to determine whether the jury's verdict could reasonably be based on the evidence. *Id.*

3

**III.   Discussion**

   **A.   The Unasserted Claims**

Dependent claims 2-5, 9, 13-20, 26, and 28-30 were not asserted at trial and thus, were not presented to the jury. As no challenge was made as to the validity of these claims, the court did not have jurisdiction to rule on the validity of them. *Fox Grp., Inc.*, 700 F.3d 1300, 1308 (Fed. Cir. 2012); *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1357 n.3 (Fed. Cir. 2013) ("The district court also erred to the extent it invalidated the unasserted claims."). Accordingly, the court vacates its judgment of invalidity with respect to each of the unasserted dependent claims.

   **B.   The Asserted Claims**

For independent claim 1, the asserted dependent claims are 6, 7, 8, 10, 11, 12; for independent claim 21, the asserted dependent claims are claims 22, 23, 24, 25, 27, 31, 33, and 34. Dependent claims are not necessarily invalid if the independent claim from which they depend are invalid. "Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; [and] dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282(a).

Claim 1 claims a process for preparing an adhesive comprising five steps: (a) introducing primary raw materials (including rubber) into a feeding section of a PRE; (b) conveying the primary raw materials from the feeding section to the compounding section; (c) mixing the primary raw materials in the compounding section wherein at least one planetary spindle is a double transversal mixing spindle comprising a plurality of

4

back-cut helical flights; (d) producing a homogeneous adhesive composition; and (e) applying the adhesive composition to a web-form material. Claim 21 is very similar; it provides for the continuous mixing of primary raw materials in the compounding section, "wherein the compounding section comprises a main spindle surrounded by and intermeshed with a plurality of planetary spindles. . . ."

Claims 6, 8 and 31 disclose the addition of secondary raw materials into the compounding section; claims 7, 32-33 disclose the secondary raw materials are solid materials, while claim 34 discloses the solid materials are introduced into the compounding section through a twin screw dosing unit; claims 10 and 24 disclose a plurality of barrel sections; claims 11 and 25 disclose each barrel section comprises a double transversal spindle; claims 12 and 22 disclose the primary raw materials selection; and claim 27, like independent claim 1, discloses applying the adhesive to a web-form material; and claim 23 discloses the pre-mastication of natural rubber.

Berry's expert, Dr. Mount, testified that claims 6, 8, 10-12, 22, 24-25, 27 and 31 of the '416 patent are obvious in light of the '447 patent (ITX-7), claim 23 is obvious in light of the '447 and 3M patents (PTX-266), claims 7 and 32-33 are obvious in light of *Understanding Extrusion* (PTX-305), and claim 34 is obvious in light of *Understanding Extrusion* and the 3M patent. (Filing No. 399, Mount Tr. at 100-01, 150-65). In its Renewed Motion for Judgment as a Matter of Law, Berry relied on that testimony to argue those dependent claims were obvious. (Filing No. 385 at 19-20). In its Memorandum in Opposition to Berry's Renewed Motion for Judgment as a Matter of

5

Law, Intertape did not offer evidence or testimony supporting the jury's verdict that the dependent claims were nonobvious. Instead, Intertape argued:

> '[D]ependent claims are nonobvious if the independent claims from which they depend are nonobvious.' *Ortho-McNeil Pharm. v. Mylan Labs.*, 520 F.3d 1358, 1365 (Fed. Cir. 2008) (internal quotations omitted). Thus, once the jury found Berry had not proven that claims 1 and 21 were obvious, the jury could only rationally find that all of the dependent claims were also nonobvious. *See id.* (After finding claim 1 nonobvious, "claims 6-8 cannot be obvious because they all depend from a nonobvious claim.").

(Filing No. 415 at 25).

In its Motion to Reconsider, Intertape argues that the court should not consider Dr. Mount's testimony because, on a motion for judgment as a matter of law, the court "must disregard all evidence favorable to the moving party that the jury [was] not required to believe." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). But Intertape fails to cite the court to any evidence[1] *contrary* to Dr. Mount's. In fact, Intertape's expert, Dr. Rauwendaal, did not offer *any* opinions on the validity of the dependent claims at trial. His trial testimony focused on two issues: whether the injection ring on Berry's planetary roller extruder ("PRE") supplied pre-masticated rubber into the feeding section or the compounding section, and whether independent claims 1 and 21 of

---

[1] In its Reply, Intertape argues for the first time that the jury was not required to believe Dr. Mount's testimony regarding the validity of claim 23 because: (1) "the very title of the '447 patent contradicts Dr. Mount's opinion by describing its process as being 'mastication free,'" and (2) Berry, in a separate filing, argued that the process of the '447 patent had "no separate preprocessing of rubber—i.e., no pre-mastication of rubber." (Filing No. 528 at 4). This argument, raised for the first time in the Reply, is waived. *Holman v. Indiana*, 211 F.3d 399, 405 n. 5 (7th Cir. 2000). And even if the argument was properly raised, Intertape's attempt to discredit Dr. Mount's testimony rings hollow. (*See infra.* at 8-9).

6

Intertape's '416 patent were anticipated or obvious[2] in light of the prior art (primarily the '447 patent). Whether the prior art rendered the '416 patent obvious is beyond the understanding of most laypersons; therefore, expert testimony was required. Fed. R. Civ. P. 702; *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008) ("Patent cases, like all other cases, are governed by Rule 702."). Thus, because Dr. Mount's opinion, informed from the prior art, is the only expert opinion regarding the validity of the asserted dependent claims, his opinion must be accepted. *Proveris Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (holding expert testimony is required to establish invalidity on grounds of anticipation and obviousness when the subject matter is sufficiently complex to fall beyond the grasp of an ordinary layperson); *see also Allergan, Inc. v. Barr Labs, Inc.*, 501 Fed. Appx. 965, 972 (Fed. Cir. 2013) (finding the technology was too complex for the ordinary juror and thus, "the district court did not err in finding that common sense and logic were not sufficiently illuminating" to carry the accused infringer's burden of proving obviousness); *but cf. Sundance*, 550 F.3d at 1365 (affirming obviousness where "[t]he technology is simple and neither party claims that expert testimony is required").

     Aside from Dr. Mount's testimony, Intertape made key concessions at trial regarding the validity of the dependent claims. For example, Intertape's patent prosecution counsel, Mark Levy, testified that at the time he drafted the provisional

---

[2] As a side note, the court disregarded Dr. Rauwendaal's testimony on the issue of spindle selection—the key issue regarding the validity of independent claims 1 and 21—because he refused to testify from the perspective of one of ordinary skill in the art. (Filing No. 478 at 20-21).

application for the '416 patent, he understood that PREs and the claimed spindle were prior art. (Filing No. 401, Levy Tr. at 5). Intertape stipulated to that fact prior to trial. (Filing No. 356, Stipulations as to the Claim Elements at Trial at 2; *see also* Filing No. 391, Tynan Tr. at 86; Levy Tr. at 6 ("They did not invent the equipment; the equipment was acquired on the market.")). Furthermore, at trial, Inventor Tynan admitted that Intertape: (1) did not invent a PRE with multiple roll cylinders; (2) did not invent any of the spindles for use in PREs; (3) did not invent the additional solid components to a PRE; (4) did not invent the use of sidefeeders to add solid components to a PRE; (5) did not invent the idea of using a PRE to combine a non-thermoplastic-elastomer-based adhesive with liquid components; and (6) did not invent the idea to inject liquids into the compounding section of a PRE during the process of making rubber-based adhesives, because all of the above were disclosed in the '447 patent. (*Id.* at 115-16, 191-92). And Intertape's expert, Dr. Rauwendaal, conceded that each of the processing steps of independent claims 1 and 21 of the '416 patent were taught in the '447 patent and the Sekisui reference with the exception of the claimed spindle. (Filing No. 397, Rauwendaal Tr. at 139, 160-61). As Inventor St. Coeur explained, the "whole basis of [the '416 patent] was Bieresdorf [the '447 patent]. They told us everything that they were doing. We just followed the breadcrumbs after that. They spelled everything out." (Filing No. 392, St. Coeur Tr. at 87).

    As for the ingredients and other constituents, which include non-thermoplastic elastomers and tackifying resins, Intertape's expert, Dr. Rauwendaal, testified that those constituents are also disclosed in the '447 patent. (Rauwendaal Tr. at 141-48; *see also*

8

PTX-264 ¶¶ 27-28) (discloses non-thermoplastic elastomers, such as natural rubber, and "[o]ther ingredients, such as tackifying resins")).

The process step of claim 23, which claims that "the non-thermoplastic elastomer comprises pre-masticated rubber," is likewise in the prior art. For example, the '447 patent discloses the pre-mastication of natural rubber in its discussion of the prior art:

> The production process disclosed in each case is based on a twin-screw extruder which permits compounding to a homogenous pressure-sensitive adhesive blend with the chosen process regime, involving mastication of the rubber and subsequent gradual addition of the individual additives with an appropriate temperature regime.
>
> The mastication step of the rubber, which precedes the actual production process, is described at length. It is necessary and characteristic of the process chosen, since with the technology chosen therein it is indispensable to the subsequent integration of the other components and to the extrudability of the blended composition.

('447 patent, col. 4, ll:32-41). The 3M patent does too. (3M patent, col. 2, ll:45-52 ("Japanese parent application Shou 50-37692 to Fukugawa et al discloses a similar process of pre-masticating mixtures of ingredients of pressure sensitive adhesives for 25 minutes, supplying the premasticated mixtures to a heated extruder . . . . This work describes a narrow range of materials including the non-thermoplastic elastomers natural rubber and styrene-butadiene rubber (SBR).")). In other words, "[p]remastication is an old step in the prior art." (Mount Tr. at 155).

Based on the record as a whole, the dependent claims add no patentable subject matter, and are mere obvious selections of the admittedly known prior art equipment and materials in their ordinary capacities. Therefore, the jury did not have a legally sufficient evidentiary basis to find the dependent claims of the '416 patent nonobvious (and valid)

in light of the prior art and the testimony of Dr. Mount, Dr. Rauwendaal, Inventor Tynan and Inventor St. Coeur, and Mr. Levy. Accordingly, the asserted dependent claims are invalid as obvious.

## IV. Conclusion

For the reasons explained herein, Intertape's Motion to Reconsider Entry of Judgment as a Matter of Law that U.S. Patent No. 7,476,416 Is Invalid as Obvious (Filing No. 518) is **GRANTED** with respect to the unasserted dependent claims and **DENIED** with respect to the asserted dependent claims.

**SO ORDERED** this 3rd day of June 2016.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.