UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

BERRY PLASTICS CORPORATION,       )
                                  )
        Plaintiff and             )
        Counter Defendant,        )
                                  )     3:10-cv-00076-RLY-MPB
        vs.                       )
                                  )
INTERTAPE POLYMER                 )
CORPORATION,                      )
                                  )
        Defendant and             )
        Counter Plaintiff.        )

**ENTRY ON PLAINTIFF'S BILL OF COSTS**

Plaintiff and Counter Defendant, Berry Plastics Corporation, filed a Complaint for Declaratory Judgment against the Defendant and Counter Plaintiff, Intertape Polymer Corporation, seeking a declaration that Intertape's United States Patent No. 7,476,416 is invalid and unenforceable. Intertape filed a Counterclaim, since amended, charging Berry with infringing the '416 Patent. Berry's claims of invalidity and Intertape's claim of infringement were tried to a jury from November 3 to November 17, 2014. The jury found that Berry did not prove by clear and convincing evidence that Claims 1, 6, 7, 8, 10, 11, 12, 21, 22, 23, 24, 25, 27, 31, 32, 33, and 34 of the '416 Patent were invalid as anticipated under 35 U.S.C. § 102; were invalid as obvious under 35 U.S.C. § 103; were invalid because the '416 Patent failed to name the proper inventors under 35 U.S.C. § 256; were invalid because the claims were derived from others under 35 U.S.C. § 102(f);

1

or were invalid because Intertape did not first conceive of the invention. In addition, the jury found that Intertape failed to prove by a preponderance of the evidence that Berry infringed Claims 1, 6, 7, 8, 10, 11, 12, 21, 22, 23, 24, 25, 27, 31, 32, 33, and 34 of the '416 Patent.

Following the jury trial, the parties filed a number of post-trial motions, including Berry's Renewed Motion for Judgment as a Matter of Law that U.S. Patent No. 7,476,416 is Invalid as Obvious. On September 30, 2015, the court granted that motion. Intertape thereafter filed a Motion for Reconsideration and, on June 3, 2016, the court granted the motion with respect to the unasserted dependent claims. Therefore, the court found, as a matter of law, that independent claims 1 and 21, and dependent claims 6, 7, 8, 10, 11, 12, 22, 23, 24, 25, 27, 31, 33, and 34 are invalid as obvious.

Berry, as the prevailing party, now moves for costs in the amount of $99,732.23 pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. For the reasons stated below, the court **GRANTS IN PART** Berry's Bill of Costs.

I.    **Prevailing Party Status**

Intertape first argues that Berry is not entitled to any costs because Berry achieved only limited success in this "mixed results" case. The court agrees the jury verdict was a wash—neither party prevailed. However, the court granted Berry's motion for judgment as a matter of law that 16 of the '416 Patent's 34 claims were invalid as obvious, including independent claims 1 and 21.

In light of the court's ruling, Intertape's reliance on cases like *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071 (7th Cir. 1999) is misplaced. *Gavoni* stands for the

2

proposition that a court may properly deny costs to a party who technically prevailed, but received only nominal results. There, for example, the jury found in favor in the plaintiff but "awarded the plaintiffs a relatively paltry $6500"—less than one percent of what they requested. *Id.* at 1074-75. Here, however, Berry invalidated the '416 Patent's independent claims and a multitude of its dependent claims. Berry's victory is more than nominal; it was substantial. *See Smart v. Local 702 IBEW*, 573 F.3d 523, 525 (7th Cir. 2009) ("A party prevails for purposes of Rule 54(d) when a final judgment awards it substantial relief."). Accordingly, the court finds it is entitled to costs.

## II. Legal Standards and Berry's Cost Requests

Under Rule 54(d), "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Taxable costs are enumerated in 28 U.S.C. § 1920:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Whether or not to award specific costs is within the discretion of the court. *U.S. Neurosurgical, Inc. v. City of Chi.*, 572 F.3d 325, 333 (7th Cir. 2009). In determining whether to tax costs against the losing party, the court engages in a two-part inquiry: "(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000) (citing *Weeks v. Samsung Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1998)). Although there is a heavy presumption in favor of the award of costs to the prevailing party, *id.*, that party "must prove with evidence and not merely with *ipse dixit* statements—that the costs were actually incurred, were reasonable in amount, and were necessary." *Trading Tech. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 969 (N.D. Ill. 2010).

The amounts to which Berry claims entitlement under Rule 54(d) and 28 U.S.C. § 1920 are as follows:

| | | |
|---|---|---|
| 1. | Fees for printed or electronically recorded transcripts | $43,226.70 |
| 2. | Fees for witnesses | $19,475.04 |
| 3. | Costs of copies | <u>$37,030.49</u> |
| | Total | $99,732.23 |

## III. Specific Objections

### A. Costs of Deposition Transcripts

A court may tax as costs the "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Intertape

4

objects to certain costs associated with the deposition transcripts taken in this case, arguing they are "extraneous costs, incurred for the convenience of counsel" and thus, are not recoverable. *Trading Tech.*, 750 F. Supp. 2d at 969 ("Costs incurred merely for the convenience of the prevailing party may not be recovered."). These costs include:

(1) "CD Depo Litigation Package" totaling $365.50 (Filing No. 549-1, Berry's Deposition Invoices at 2-3, 5, 8, 9, 17, 19, 20, 27);

(2) "Video/Text Synchronization" totaling $2,032.50 (*id.* at 4, 6, 18);

(3) "Rough Draft of Deposition Transcript" totaling $2,297.55 (*id.* at 8, 17, 19, 20, 27);

(4) In addition to paper exhibits, a second set of "Exhibits Scanned; Searchable – OCR" totaling $641.03 (*id.* at 9, 17, 19, 20, 23, 24);

(5) "Unedited ASCII (RT)" of Deposition Transcript totaling $393.00 (*id.* at 11, 12, 13)

(6) "Document Imaging" totaling $63.00 (*id.* at 21);

Generally, rough drafts of transcripts, ASCII discs, video synchronization, etc., are considered for the convenience of counsel and are not recoverable. *See, e.g.*, *Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 264 F. Supp. 2d 753, 780 (S.D. Ind. 2003) ("The costs of numerous extra services such as 'Live Note Hookup,' expedited delivery, rough drafts, ASCII discs, Real Time, E Transcript 'Rough Copy,' and the costs of extra copies of exhibits cannot fairly be shifted."); *DSM Desotech, Inc. v. 3D Sys. Corp.*, No. 08 cv 1531, 2013 WL 3168730, at *4 (N.D. Ill. June 20, 2013) (disallowing costs for "rough drafts" and "rough ASCII" copies, and for "video synchronization"); *Llantan v. Harry S. Truman College*, No. 10 C108, 2011 U.S. Dist. LEXIS 145488, at *3-4 (N.D. Ill. Dec.

19, 2011) (collecting cases to show that "[t]he great weight of authority in this District holds that costs for mini-scripts and [litigation support] diskettes are not recoverable" in the absence of proof that these "tools were reasonably necessary for the litigation and not merely for convenience").

Here, Berry argues the costs listed above were reasonable and necessary because the depositions were used for purposes of litigating this case and, more specifically, for purposes of cross-examination at trial. Yet Berry does not explain *why* those additional services were necessary in addition to the original and certified transcripts it already had. In the absence of any explanation regarding the justification for these specific expenditures, the court must find they were for counsel's convenience and **SUSTAIN** Intertape's objection. Intertape shall not be taxed for those expenses.

Intertape also objects to Berry's request for the cost of the original transcripts of Eldridge Mount ($1,354.25) and Chris Rauwendaal ($2,574.00), both of whom were expert witnesses, because the invoice from the court reporting service does not contain line-item or per-unit charges. (*See* Berry's Deposition Invoices at 25-26). Given the dearth of information, Intertape maintains it cannot ascertain if the invoice contains unreasonable charges. Berry does not specifically respond to Intertape's objection. Without some indication of the basis of the charges, the court will tax Intertape for half of the cost of the depositions, or $1,964.13. Its objection is therefore **SUSTAINED IN PART**.

Finally, Intertape objects to costs associated with expedited ($4.85 per page) and 14-day ($4.25 per page) transcripts, which were ordered after the conclusion of the jury

trial of this matter, which total $9,740.70.  (*Id.* at 29-35).  A reasonable rate for these transcripts is the regular copy rate established by the Judicial Conference of the United States ($3.65 per page).  *See* United States Court Federal Court Reporting Program, December 12, 2016, http://www.uscourts.gov/services-forms/federal-court-reporting-program; *see also Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 456 (7th Cir. 1998) (finding "the Judicial Conference rates apply to deposition charges by official and private court reporters).  Intertape does not oppose the necessity of the transcripts, but requests that it be taxed at that rate.  Its objection is therefore **SUSTAINED**.

Relatedly, Intertape objects to the attendance fee of Veritext court reporters to the extent they make the overall cost of the deposition exceed the regular copy rates approved by the Judicial Conference.  The court agrees that Intertape should not be taxed for the additional amount.  *See Trading Tech.*, 750 F. Supp. 2d at 978 ("a court reporter's appearance fee 'may be taxed as costs only to the extent that the fee, when added to the per-page rate charged for the deposition transcript, does not make the total charge per page exceed [the Judicial Conference rate].'" (quoting *Fletcher v. Chi. Ralk Link, LLC*, No. 06 C 842, 2007 WL 4557816, at *1 (N.D. Ill. Dec. 20, 2007))).  Intertape's objection is **SUSTAINED**.  Intertape shall be taxed a total of $23,425.23 for Berry's transcript costs.  This amount reflects those costs for exhibits, videography services, etc., to which Intertape did not pose an objection.  (*See* Filing No. 551-1, Intertape's Objections to Berry's Request for Printed and Electronically Recorded Transcripts).

Lastly, Intertape objects to the shipping and handling charges invoiced by Veritext Chicago Reporting Company to the extent they exceed the normal rate charged by the

company. The district court may award deposition shipping costs as "incidentals." *Chi. Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*, No. 07 CV 623, 2014 WL 125937, at *3 (N.D. Ill. Jan. 14, 2014). Typically, however, such expenses are not normally taxed. *Harkins v. Riverboat Servs., Inc.*, 286 F.Supp.2d 976, 981 (N.D. Ill. 2003) ("Costs associated with delivering, shipping, or handling transcripts are ordinary business expenses and are not recoverable."). As Intertape is nevertheless agreeing to pay the regular shipping and handling rate, the court will **SUSTAIN** Intertape's objection to the rates over and above the regular shipping and handling rate. Intertape shall be taxed $450.15 for shipping and handling charges.

Lastly, Intertape objects to the cost of the transcript for the inequitable conduct trial ($970.90). As Berry did not prevail, it is not entitled to the costs of the transcript. Intertape's objection is **SUSTAINED**.

Based on the foregoing objections, Intertape shall be taxed in the amount of $25,839.51, rather than the $43,226.70 that Berry is requesting.

### B. Witness Fees

Under Section 1920(3), a court may award costs for witness fees that are specified in 28 U.S.C. § 1821. Collectively, those sections authorize the award of costs for reasonable travel and subsistence expenses of witnesses. *See Majeske*, 218 F.3d at 825-26. Intertape objects to both categories of costs.

#### 1. Subsistence Charges

Pursuant to Section 1821(d), "[a] subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far

removed from the residence of such witness as to prohibit return thereto from day to day." Section 1821(d)(2) caps the amount that can be reimbursed per diem for subsistence. The highest allowable amount per diem in 2014 was $71.00. *See Per Diem Files (Archived)*, http://www.gsa.gov/portal/content/103168; *see also DSM Desotech*, No. 08 cv 1531, 2013 U.S. Dist. LEXIS 86967, at *4 (2013 per diem rate was $71).

Intertape objects to Berry's request for reimbursement of business meals[1] for John Baker, Berry's corporate representative, on November 8, 9, 10, 11, 13, and 16, 2014, and the business meals for Abboud Mamish on November 10, 2014, because both Mr. Baker and Mr. Mamish completed their testimony on Friday, November 7, 2014. (*See* Filing No. 549-2, Berry's Witness Costs at 8-12; Filing No. 550, Berry's Bill of Costs at 6[2]). According to Berry, these meal expenses are justified because they were being prepared as potential rebuttal witnesses. They ultimately did not testify in rebuttal, however. Therefore, Intertape's objection is **SUSTAINED**. *See, e.g., McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990) (affirming denial of subsistence allowance because the witness' testimony was unnecessary).

Intertape also objects to the business meal held on Saturday, November 8, 2014, involving Seigfried Luchtefeld, Ralf Quack, Michael Batton, Mr. Mount, and Mr. Baker, as unreasonably expensive. The amount requested is $399.24, which equates to $79.85

---

[1] The meals, which often included other witnesses, totaled $596.17.

[2] The court includes a citation to Berry's Memorandum in Support of its Bill of Costs because the amounts for meals shown in the chart at page 6 is generally less than the non-itemized receipts submitted by Berry. The receipts presumably include the cost of attorney meals which are not compensable under Sections 1920 and 1821.

9

per person. Berry is not entitled to the costs associated with Mr. Baker's meal, nor any amounts above the government rate of $71.00. Therefore, Intertape's objection is **SUSTAINED IN PART**. The court will tax Intertape $284.00 ($71.00 x 4) in costs. With respect to the business meal dated November 8, 2014 involving the same individuals, the court will subtract Mr. Baker's portion of the cost for the same reasons ($104.62 ÷ 5 = $20.92) and tax Intertape $83.70. As Intertape poses no objection to Mr. Baker's meal on November 7 ($24.44), and to Ms. Frances McCloskey's meal on November 11 ($11.52), Intertape shall be taxed for those amounts.

Lastly, Intertape objects to the cost of Mr. Mount's meals ($42.03) during the inequitable conduct court trial on December 7 and 8, 2015, because Berry did not prevail on that claim. The court agrees with Intertape and **SUSTAINS** its objection.

In light of the court's rulings, Berry shall be taxed $403.66 for the meals of Berry's witnesses.

### 2. Travel Expenses

Intertape lodges a number of objections to Berry's request for the travel expenses of four witnesses from Entex Rust & Mitschke GmbH—Mr. Luechtefeld, Mr. Quack, Mr. Batton, and Mr. Roewer. The court will begin with the travel costs of Mr. Roewer.

### 1. Mr. Roewer

First, Intertape argues it should be not required to pay any travel expenses of Mr. Roewer "because his testimony was made necessary by Berry's dilatory conduct." (Filing No. 551, Intertape's Response in Opposition at 11). Intertape's charge relates to the court's decision to allow Mr. Roewer, a former employee of Entex, to testify at trial

10

regarding Trial Exhibit 140, otherwise known as the "Test Set-Up Email." Briefly, the email was produced by Mr. Luechtefeld, in preparation for Intertape's visit to test the Entex planetary roller extruder using Intertape's formulation. The email showed his proposal to use double transversal spindles due to its superior compounding abilities. On August 29, 2003, Mr. Luechtefeld forwarded the email to Mr. Roewer, who sent it to Mr. David Kovach of Intertape, along with a series of eight other emails. For reasons unknown, Intertape claims it never received the Test Set-Up Email. Berry claims that it received a copy of the Test Set-Up Email from Mr. Luechtefeld about a week after the parties returned from deposing him in Germany. Berry thereafter produced a copy of the email to Intertape on February 12, 2014.

On Friday, November 7, 2014, during the jury trial of this matter, Berry informed the court that it planned to call Mr. Roewer to lay a foundation for the admission of Trial Exhibit 140 as a business record. Over Intertape's objection, and pursuant to the court's Order, Berry made Mr. Roewer available for a deposition on November 11. On Wednesday, November 12, Mr. Roewer testified, and the exhibit was admitted.

Trial Exhibit 140 was the subject of three motions, two of which were filed prior to trial, and one which was raised in the midst of trial. The circumstances regarding Intertape's failure to receive the email despite the fact that it received the other eight—which were sent within minutes of one another—remains a mystery, as does Mr. Luechtefeld's discovery of the email following his deposition. At any rate, Mr. Roewer's testimony was necessary for Berry to lay a foundation for the admission of Trial Exhibit 140 as a business record. Therefore, the court will award Berry Mr. Roewer's reasonable

travel expenses. Intertape's objection to Mr. Roewer's travel costs *in toto* is therefore **OVERRULED**.

This brings the court to the related issue of Mr. Roewer's airfare. The total cost was 5.091,21€, which converts to $6,070.90 (5.091,21 x 1.1924 Euro exchange rate charged to Berry). The airfare charge for Mr. Batton and Mr. Luechtefeld was 1.916,08€, or $2,284.73. The court is in agreement with Intertape; Mr. Roewer's airfare was unreasonably expensive. Therefore, the court will award Berry 1.196,08€ rather than 5.091,21€ for Mr. Roewer's airfare. Intertape's objection is **SUSTAINED**.

### 2. Hotel Stays for Entex Witnesses

Next, Intertape objects to the Entex witnesses' hotel stay, claiming the witnesses remained in the United States longer than necessary. According to the record in this case, Mr. Batton testified on November 10, Mr. Quack testified on November 12, Mr. Luechtefeld testified on November 10 and 12, and Mr. Roewer was deposed on November 11 and testified on November 12. Mr. Batton and Mr. Quack stayed at a hotel for seven days, Mr. Luetechfeld stayed six days, and Mr. Roewer stayed eight days.

In addressing the reasonableness of the witnesses' hotel stays, it is important to note that they all flew from Germany to Evansville. Under these circumstances, arriving two days before trial and departing two days after trial is reasonable, given the time change, the uncertainty of the trial schedule, the time for the witness to prepare for trial, and the length of the flight itself. Accordingly, the court will deduct one night of hotel stay for Mr. Batton, two nights for Mr. Roewer, and two nights for Mr. Quack. This means Intertape will be taxed for six nights for Mr. Batton, Mr. Roewer, and Mr.

Luechtefeld, and five nights for Mr. Quack. Intertape's objection is **SUSTAINED IN PART**.

Intertape also objects to the total cost of Mr. Batton's hotel stay. He charged 1.153,70€, while the other Entex witnesses charged between 569,82€ and 724,51€ (Berry's Witness Costs at 13-14). Converting the total charges for each Entex employee from Euros to Dollars establishes that the charges for Mr. Batton's hotel stay were substantially more per night than the other Entex witnesses. Mr. Batton's hotel stay averaged $196.52 per night, while Mr. Roewer's per night stay was $107.99, Mr. Luechtefeld's was $113.24, and Mr. Quack's stay was $118.80. Accordingly, the court will award Berry the equivalent of 100€ per night. Intertape's objection is **SUSTAINED IN PART**.

### 3. Additional Hotel Expenses

Intertape does not object to the hotel expenses of Mr. Mount dated May 22, 2014, nor to the hotel expenses of Mr. Mount, Mr. Donald Scates, Ms. McCloskey, Mr. Quack, and Mr. Batton dated November 22, 2014, which total $1,344.61. Intertape shall be taxed in that amount.

### 4. Other Expenses

Lastly, Intertape objects to the 96,00€ charge for Mr. Quack's rental car, the 590,12€ charge for Mr. Batton's rental car, and other "miscellaneous costs" submitted by the Entex witnesses totaling 337,05€ (*Id.*). Berry did not respond to this argument nor present any evidence to substantiate these costs. Therefore, Intertape will not be taxed on those costs. Intertape's objection is **SUSTAINED**.

In light of the court's rulings, Intertape shall be taxed in the amount of $403.66 for the meal expenses of Berry's witnesses, $1,344.61 for the hotel expenses of Berry's witnesses dated May 22, 2014 and November 2, 2014, and 9.507,22€[3] for the travel expenses of the Entex witnesses.

### C. Fees for Copies and Exemplification

Intertape raises two primary objections to Berry's request for the costs associated with making copies and for exemplification. First, it argues, Berry has requested costs for products and services that are not compensable under Section 1920(4). Second, with respect to the charges that may be compensable under Section 1920(4), Berry has not established the costs were reasonable or necessary.

#### 1. Categories of Charges

Intertape objects to the categories of charges listed on Berry's Exhibit C (Filing No. 549-3), which contains a lengthy spreadsheet of the copying charges it seeks and thirteen invoices. Its first objection is to the categories of charges listed below:

(1) Special Stamp ($157.44) (*see, e.g.,* Filing No. 549-3, Berry's Copying Charges and Invoices at 2-3);

(2) Tech Services/DVD Charges ($50.00) (*see, e.g., id.* at 2);

(3) File Renaming ($36.00) (*id.* at 18); and

(4) CD Master ($20.00) (*id.*).

---

[3] This number represents 7.284,62€ for hotel, 11,26€ for Mr. Roewer's travel Visa, and 2.211,34€ for hotel.

14

Intertapes argues the description of these charges does not sufficiently describe the nature of the service for which Berry seeks reimbursement, and thus, they do not provide a basis for determining whether the charges are compensable. Berry did not meaningfully respond to the argument. Therefore, the court finds its request for these charges is waived. *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007). Intertape's objection is **SUSTAINED**.

Second, Intertape objects to the following services as not compensable under Section 1920(4):

(1) Electronic Data Discovery Processing ($3,750.00) (*see, e.g.,* Berry's Copying Charges and Invoices at 2-3);

(2) Technology Services Specialist ($1,109.25) (*see, e.g., id.* at 2-8); and

(3) OCR & TIFF Conversion ($537.05) (*see, e.g., id.* at 5).

Berry did not meaningfully respond to the argument. Therefore, the court finds its request for these charges is waived. *Wojtas*, 477 F.3d at 926. Even if Berry had responded, this court has previously determined that such charges are not compensable. *CSP Techs., Inc. v. Sud-Chemie AG*, 4:11-cv-29-RLY-WGH, 2015 U.S. Dist. LEXIS 65722, at *8-10 (S.D. Ind. May 15, 2015). Intertape's objection is **SUSTAINED**.

Third, Intertape objects to Berry's request for reimbursement for numerous toner cartridges totaling $4,368.51. Berry responds it used its own printers and toners to make exemplifications for trial. The court reviewed Berry's invoices. Only three relate to toner cartridges, and are dated October 31, 2014, November 5, 2014, and December 8, 2015. (*See* Berry's Copying Charges and Invoices at 9-10, 20, 25-26). As an initial

15

matter, the October 31 invoice totaling $982.26 provides no description of what was ordered and contains only a bottom-line final amount. (*Id.* at 20). The December 8 invoice ($1,980.00) only reasonably relates to the inequitable conduct trial held on December 7-8, 2015. As Berry did not prevail, it is not entitled to those costs. Moreover, the invoices, without more, do not sufficiently inform the court that the specific toner cartridges listed on them were used to make exemplifications which were "necessarily obtained for use in the case." *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428 (7th Cir. 2000) (noting costs for exemplification may not be awarded unless the court determines they are "necessarily obtained for use in the case"). Indeed, Berry does not even inform the court which exemplifications it produced in-house for use at trial. *Trading Tech.*, 750 F. Supp. 2d at 981 ("When a prevailing party does not identify the exhibits for which it claims costs, the court should deny awarding costs for the exhibits because it is impossible to determine whether the costs were necessary for use in the case."). Therefore, Intertape's objection is **SUSTAINED**.

Lastly, Intertape objects to the cost of certified copies of the prosecution history on the patent-in-suit and of the 3M Opposition in Europe which total $2,173.93. (*See* Berry's Copying Charges and Invoices at 8, 12-14). The three invoices from Grund Intellectual Property Group in Munich, Germany, include costs for reviewing emails between the parties and for Fed-Ex delivery. Additionally, the charges are only partially itemized, making it difficult to determine the actual charge for each copy. For example, in one invoice, Grund charged for two items: (1) reviewing email, checking the German Patent Register, reporting the status, filing a request for an inspection of the files with the

16

German Patent Office, and for sending an email; and (2) "[d]isbursements (photocopies, facsimile, e-mail, etc.)." (*Id.* at 12). The court will therefore tax Intertape for half of Berry's request, or $1,086.97. The total costs deducted from Berry's request, at this juncture, is $11,115.22.

### 2. Compensable Costs

Finally, Intertape argues that the chart Berry submitted in support of its request for copying charges is grossly deficient, as it fails to inform the court which costs may have been necessary to the litigation as opposed to merely convenient for Berry's counsel. Therefore, Intertape argues, Berry is not entitled to *any* of its copying charges.

Copying charges are permissible if the copies "are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Thus, parties may recover the costs of copies attributable to discovery, pleadings, motions, and memoranda submitted to the court, but they may not recover the costs of making copies solely for the convenience of counsel. *Swan Lake Holdings, LLC v. Yamaha Golf-Car Co.*, No. 3:09-CV-228, 2011 U.S. Dist. LEXIS 52395, at *8-9 (N.D. Ind. May 13, 2011).

In support of its request for copying charges, Berry provided a summary chart with five columns—the date, quantity, rate charged, amount charged, and a description that states simply, "Copying Charges"—and ten invoices (including the three related to the certified copy issue discussed above). (*See* Berry's Copying Charges and Invoices). The chart includes the total number of pages copied, but does not indicate how many copies were made. Berry provided no evidence beyond ten invoices to substantiate these charges. (*See id*. at 17-19, 21-24). Complicating matters, the invoices contain charges

17

for other services, such as tabs, hole drilling, binders, and document scanning. Such charges are not compensable. *See U.S. Fidelity & Guar. Co. v. Shorenstein Realty Servs., L.P.*, 803 F. Supp. 2d 920, 925 (N.D. Ill. 2011) (denying costs for "custom tabs, redwell folders, binders, binds, and a cd" because defendant "has not explained why such extras are necessary"); *Engate, Inc. v. Esquire Deposition Svs., LLC*, No. 01 C 6204, 2006 WL 695650, at *5 (N.D. Ill. Mar. 13, 2006) (declining to award costs for "extras" such as "binding, tabbing and custom filing" because such expenses are not "necessary" within the meaning of § 1920).

Although Berry is not required to submit a description "so detailed as to make it impossible economically to recover photocopying costs," *Northbrook Excess and Surplus Inc. Co. v. Proctor & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991), it is reasonable to assume Berry would put some effort into explaining, at least in general, what was copied. Berry provides the court no explanation for its request, except to emphasize the tens of thousands of pages produced in this case. That is insufficient. For these reasons, the court will tax Intertape for one-half of Berry's copy costs, after the subtraction of the costs discussed in Section C1 above ($11,115.22). Accordingly, Intertape shall be taxed $12,957.64 ($25,915.27 ÷ 2 = $12,957.64).

**IV.  Conclusion**

For the reasons explained above, Berry's Bill of Costs (Filing No. 549) is **GRANTED IN PART**. Berry is entitled to costs in the amount of $51,893.70:

1. Fees for printed or electronically recorded transcripts      $25,839.51

2. Fees for witnesses

|  |  |  |
|---|---|---|
| Subsistence | | $403.66 |
| Hotel | | $1,344.61 |
| Entex Travel Costs | 9.507,22€ or | $11,336.41 |

3. Costs of copies          <u>$12,957.64</u>

Total          <u>$51,881.83</u>

**SO ORDERED** this 17th day of January 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.